SHARON TOLER, Employee, Plaintiff v. BLACK AND DECKER, Employer, CIGNA INSURANCE COMPANY, Insurer, Defendants

No. COA98-1037

(Filed 7 September 1999)

**1. Workers' Compensation— credibility—determination by Full Commission**

The Court of Appeals was bound by the Industrial Commission's decision reversing the deputy commissioner's determination that plaintiff-employee lacked credibility based on her uncorroborated version of the events because: (1) the Full Commission ultimately determines credibility, whether from a cold record or from live testimony; and (2) the Full Commission is not required to demonstrate that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness.

**2. Workers' Compensation— competent evidence**

Despite the abundance of evidence to the contrary indicating plaintiff-employee had previously been treated for psychological concerns, there was competent evidence provided by the testimony of a psychologist to support the Industrial Commission's determination that plaintiff is also entitled to compensation for psychiatric problems exacerbated by her compensable work-related neck injury.

Appeal by defendants from opinion and award filed 3 June 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 May 1999.

**TOLER v. BLACK AND DECKER**

[134 N.C. App. 695 (1999)]

*Beaver, Holt, Richardson, Sternlicht, Burge & Glazier, P.A., by Vickie L. Burge, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Karen K. Prather, for defendant-appellants.*

LEWIS, Judge.

Plaintiff claims to have injured her neck on her job for defendant-employer on or about 16 August 1993, but did not report any neck injury to her supervisor or the plant nurse until 1 September 1993 at the earliest. There were no witnesses to the alleged injury. Plaintiff stated in a recorded interview that she did not start noticing problems until "just a few days later" than 16 August, when, in her words, "I had woke up and my neck [was] hurting like it was stiff like I had [a] cold in my neck." Plaintiff continued working and made no mention of any neck problems to her doctor until 8 September 1993, according to the medical records of Dr. Robert Fletcher. Dr. Fletcher referred plaintiff to Dr. Inad Atassi, a neurosurgeon. After an MRI, Dr. Atassi found a mild central disc protrusion and recommended a conservative treatment.

Plaintiff's family physician, Dr. John Blue, examined plaintiff and could make "very little objective findings" to support plaintiff's subjective complaints of neck pain; an MRI showed no disc herniation. Upon Dr. Blue's referral, Dr. Michael C. Pare examined plaintiff in November 1994 and found that "[t]he pain in her neck ha[d] pretty much disappeared." When plaintiff visited Dr. Emory Sadler for psychological evaluation on 6 February 1995, she was "not sure of the cause of her pain and . . . listed weak muscles as her best guess as to what is wrong." On that same date, she indicated in an interview with Dr. Jessie Leak that she "realize[d] that her current state of mind is impacting her pain complaint" and "denie[d] any type of trauma or accident related to this" pain in an interview with a physical therapist.

It was not until 21 April 1995, over twenty months after purportedly sustaining this injury to her neck, that plaintiff filed a Form 18 in the Industrial Commission to officially give notice of the accident to her employer. Deputy Commissioner George T. Glenn II received plaintiff's testimony and other evidence on 28 March 1996 and filed an opinion and award on 18 June 1997. In that opinion and award, the deputy commissioner concluded that "[p]laintiff did not sustain an injury by accident or specific traumatic incident arising out and in the

## TOLER v. BLACK AND DECKER

[134 N.C. App. 695 (1999)]

course and scope of her employment with defendant-employer on August 16, 1993" and that "[p]laintiff has failed to prove by the greater weight of the evidence that she is entitled to recover any further workers' compensation benefits in this matter." Plaintiff's claim was denied, and she appealed to the full Commission.

The full Commission made in part the following findings of fact:

4. . . . . The initial Form 19 completed by defendants indicated that plaintiff complained only about her right hand and arm. When plaintiff received a copy of the Form 19, she had the nurse correct the omission by completing another Form 19 regarding plaintiff's neck pain.

5. Defendants initially sent plaintiff to see Dr. Robert Fletcher for her [unrelated] hand and arm pain. Plaintiff also informed Dr. Fletcher of her neck pain during her first visit on 1 September 1993, but he did not note the neck pain until her next visit on 8 September 1993.

. . . .

17. The Full Commission accepts the testimony of plaintiff regarding the circumstances of her work related injury and continued pain as credible.

The full Commission, with one commissioner dissenting, then reversed the deputy commissioner and concluded that plaintiff was entitled to compensation for both her neck injury and the "aggravation and exacerbation of plaintiff's [post-traumatic stress disorder] and depression, which was a natural and unavoidable consequence of her compensable injury . . . ." Commissioner Sellers dissented from the full Commisison's opinion and award, stating in part,

The undersigned is unable to find plaintiff's testimony credible regarding the occurrence of a compensable work-related neck injury. There are too many inconsistencies between plaintiff's testimony, her prior recorded statements and medical records. The medical evidence shows that plaintiff's neck pain had no sudden onset, there was no objective physical evidence for the pain, and plaintiff delayed reporting neck problems and had no witnesses to the alleged injury.

Defendants appeal.

**[1]** Defendants' first argument on appeal is that the full Commission, reviewing only a cold record, failed to demonstrate "that it gave due consideration to the general rule that the hearing officer is the better judge of plaintiff's credibility in this case." We agree entirely with defendants and with Commissioner Sellers' dissent on this point, but are unable to reverse the full Commission here under *Adams v. AVX Corp.*, 349 N.C. 676, 509 S.E.2d 411 (1998), *reh'g denied*, 350 N.C. 108, —— S.E.2d —— (1999). This Court, in recent years, has encouraged the full Commission to follow the common-sense approach that prevails throughout the law and acknowledge when reversing the deputy commissioner's credibility findings that, as between a hearing officer who can observe the demeanor of witnesses and a reviewing board that has only paper in front of it, the hearing officer is in the better position to determine whether live testimony is credible. *See generally Sanders v. Broyhill Furniture Industries*, 124 N.C. App. 637, 478 S.E.2d 223 (1996), *disc. review denied*, 346 N.C. 180, 486 S.E.2d 208 (1997), and its progeny.

As noted in the citation above, our Supreme Court previously denied discretionary review to the plaintiff in *Sanders*. Nevertheless, that Court has since overruled this approach to credibility in workers compensation actions, stating,

> Whether the full Commission conducts a hearing or reviews a cold record, N.C.G.S. § 97-85 places the ultimate fact-finding function with the Commission—not the hearing officer. It is the Commission that ultimately determines credibility, whether from a cold record or from live testimony. Consequently, in reversing the deputy commissioner's credibility findings, the full Commission is not required to demonstrate, as *Sanders* states, "that sufficient consideration was paid to the fact that credibility may be best judged by a first-hand observer of the witness when that observation was the only one." *Sanders*, 124 N.C. App. at 641, 478 S.E.2d at 226. To the extent that *Sanders* is inconsistent with this opinion, it is overruled.

*Adams*, 349 N.C. at 681, 509 S.E.2d at 413-14. It could be argued that these references to "the Commission" and its role in credibility determinations are vague, since technically the hearing officer is a member of the Commission, though not the full Commission. This would seem a question best resolved in the statute by the Legislature. Until then, defendants in the action currently before us acknowledged in a letter to this Court that *Adams*, filed after their brief was submitted, is adverse to their position; we are bound by *Adams*.

Plaintiff was fortunate to have two members of the full Commission lend receptive eyes to her plight in their reading of the material before them. By piecing together enough printed testimony to yield a result favorable to plaintiff and in spite of the deputy commissioner's implicit determinations of plaintiff's lack of credibility, the full Commission deemed plaintiff's uncorroborated version of the events credible. Had *Sanders* not been overruled, defendants' first argument would be a solid one. In light of the current state of the law, we hold that it must fail.

[2] Defendants' second argument pertains to the full Commission's conclusion that the aggravation and exacerbation of plaintiff's post-traumatic stress disorder ("PTSD") and depression is compensable. Defendants claim this conclusion was reached in error, arguing that "the record is devoid of evidence of a causal connection between plaintiff's psychiatric problems and her alleged work injury." Because it is not our prerogative to weigh the evidence, *see Morrison v. Burlington Industries*, 304 N.C. 1, 6, 282 S.E.2d 458, 463 (1981), we must disagree.

During the live testimony before the deputy commissioner, the following exchange took place between defense counsel and plaintiff:

Q. Prior to the alleged neck injury, had you ever had problems with depression before?

A. No, ma'am.

Q. Had you ever had any problems with feeling anxious or having anxiety attacks?

A. No, ma'am, not until about the last three—from the time I went to Sandra [Windham], that was when the things was coming on, and I didn't know what it was. I just felt like I couldn't breathe my heart was beating so fast.

Plaintiff's medical records, however, told a different story. Medical records from plaintiff's family doctor, Dr. Blue, indicated that plaintiff had been treated for psychological concerns since at least 24 May 1993, when she was diagnosed as suffering from "anxiety/depression." She enumerated many stressors in her life and indicated that she had "[n]oticed crying spells for no reason for the last y[ea]r." Plaintiff was given medication for her psychological issues, and returned for a follow-up "of her depression," according to medical

records, on 15 June 1993. She recounted recent stressful events involving her boyfriend at that visit, stated that her appetite had decreased and that she had episodes of crying. Dr. Blue noted plaintiff's "Anxiety/Depression, still poorly controlled."

Psychological evaluations after August of 1993 delved into plaintiff's problems in greater detail. The evidence of record is overwhelming that plaintiff had suffered from a variety of unpleasant experiences in her life that led to her psychological problems, but respecting her privacy we will not recount them here. While most of the doctors who evaluated plaintiff agreed that the alleged neck injury had no bearing on her psychological disorders, Ms. Windham, a masters-level psychologist, stated at certain points in her deposition that "the [neck] injury exacerbated the P.T.S.D.," that "[t]he depression is related to the work injury," and that "it appeared that the injury just really intensified the P.T.S.D. and, in my opinion, added to her psychological distress or pain."

Despite the abundance of evidence to the contrary, there is competent evidence in the record, however thin, in the form of Ms. Windham's deposition to indicate that plaintiff's neck injury had a role in exacerbating her pre-existing PTSD and depression. However, the full Commission's findings of fact go further:

18. Plaintiff sustained an injury by accident in the course and scope of her employment on 16 August 1993, as a direct result of a specific traumatic incident of the work assigned to her. This resulted in an injury to her neck.

19. Plaintiff has a chronic pain disorder as a *natural and unavoidable consequence* of her neck injury.

20. Before 16 August 1993, plaintiff had PTSD and depression, but these conditions were not disabling.

21. As a *natural and unavoidable consequence* of the pain from the neck injury, plaintiff's pre-existing PTSD and depression were aggravated and exacerbated.

22. Since August 1994, as a result of the work-related injury to plaintiff's neck, the chronic pain from that injury, and the aggravation and exacerbation of her PTSD and depression, plaintiff has been unable to work and earn the wages in her former position with defendant-employer or in any other employment.

**TOLER v. BLACK AND DECKER**

[134 N.C. App. 695 (1999)]

(emphasis added). While we recognize that "[t]he findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence," *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977), the full Commission cited and we can find no evidence in the record to indicate that the exacerbation and aggravation of plaintiff's psychological problems was a "natural and unavoidable consequence" of this injury.

Fortunately for plaintiff, though, it does not appear in our law that the aggravation and exacerbation of her preexisting condition must have been a "natural and unavoidable consequence" of her work-related injury for her to be compensated for her psychological problems in this case. The language employed by the majority of the full Commission was without basis in the record, but was not required under the very case cited to support the relevant conclusion of law:

> 2. The aggravation and exacerbation of plaintiff's PTSD and depression, which was a *natural and unavoidable consequence* of her compensable injury, is also compensable. *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E.2d 458 (1981).

(emphasis added). According to our Supreme Court in *Morrison*,

> When a pre-existing, *nondisabling, non-job-related* condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent.

*Id.* at 18, 282 S.E.2d at 470. The plaintiff in *Morrison* suffered from pre-existing physical infirmities and not psychiatric problems. In a case cited by plaintiff on appeal, *Hill v. Hanes Corp.*, 319 N.C. 167, 353 S.E.2d 392 (1987), the plaintiff was compensated for depression caused—not exacerbated—by his work-related injury.

If compensation is available for physical injuries caused by an accident, physical injuries exacerbated by an accident, and psychiatric problems caused by an accident, we know of no compelling reason for the Commission not to award compensation for psychiatric problems exacerbated by an accident. Even if there is no competent evidence in the record to support the Commission's findings and conclusions that the exacerbation here was a "natural and unavoidable

consequence" of the injury, there was evidence in the form of Windham's testimony to establish the exacerbation normally required to result in compensation. As such, defendants' second argument is without merit and the opinion and award of the full Commission is affirmed.

Plaintiff indicated in one session with Windham that she did not want to ever return to work. As a result of *Adams*, she may well find this wish granted.

Affirmed.

*Chief Judge EAGLES and Judge HORTON concur in the result.*