***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses in part and affirms in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On December 1, 2003 an employer-employee relationship existed between the parties.
2. On December 1, 2003, Royal Sun Alliance Insurance Company was the carrier liable on the risk. *Page 2 
3. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
4. The parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and subject matter of this case.
 *********** EXHIBITS
The following documentary evidence was received as:
 Stipulated Exhibit #1: Medical Records;
 Stipulated Exhibit #2: IC Forms;
 Stipulated Exhibit #3: Plaintiff's Discovery Responses;
 Stipulated Exhibit #4: Printout of Medicals Paid;
 Stipulated Exhibit #5: Defendant-Employer's Report of Injury;
 Stipulated Exhibit #6: Plaintiff's Personnel Records;
 Stipulated Exhibit #7: Social Security Disability File; and
 Plaintiff's Exhibit 1-5: Affidavits of Plaintiff, Gail Hatcher, Jamie Cockerham, Chris Reneck, And Lynn Heath.
 *********** ISSUES
1. To what benefits is plaintiff entitled as a result of his compensable injuries?
2. Whether plaintiff's claim for additional compensation is barred by the applicable statute of limitations as it was filed more than a year after the last date of payment of medical compensation? *Page 3 
3. Whether plaintiff's current alleged disability arises from causes and conditions unrelated to, or pre-exisiting, his employment?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDING OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 26 years old and had graduated from high school. In addition, he had attended Lenoir Community College for several semesters.
2. On July 20, 1997, plaintiff sustained multiple injuries including an injury to his head when he was involved in a motor vehicle accident during which he experienced loss of consciousness. Plaintiff was diagnosed with a closed head injury and cerebrospinal fluid leak.
3. On July 1, 2002, plaintiff commenced work as a special project maintenance worker for defendant-employer. His job duties included installing equipment, repairing equipment, construction, destruction, and heavy lifting. At the time of plaintiff's accident, he had been employed with defendant-employer for approximately two years.
4. On November 26, 2003, plaintiff and a number of his co-workers were installing a leg for a shaker at the plant of defendant-employer. Plaintiff guided a steel beam into place that measured approximately 6 inches by 12 inches by 13 feet, and weighed several hundred pounds. The beam was suspended above the ground on a crane, and plaintiff was guiding the beam into place while one co-worker operated the crane and another co-worker observed. As plaintiff was guiding the beam, the chain, which was hooked to the beam and to the crane, came loose. One end of the beam crashed to the surface upon which plaintiff was standing, and the beam toppled onto plaintiff, striking him first in the back of his head, breaking his hard hat and pitching it from *Page 4 
his head, and then sliding down his neck and shoulders and striking him in his back. The beam pinned plaintiff in a bent-over, or flexed position until he was able to get out from under it.
5. Plaintiff's co-employee, Christopher Rennick, witnessed the accident and plaintiff's supervisor, Felton Cockerham, who was operating the crane, was present at the scene of the accident and was advised immediately of the accident. The Full Commission finds that defendant-employer had actual knowledge of the accident at the time it occurred and was not prejudiced by any lack of written notice within 30 days.
6. Christopher Rennick, plaintiff's co-worker who witnessed the accident, testified at the hearing before the Deputy Commissioner that he actually saw the beam strike plaintiff on his backside from the neck down. He stated that the beam "went thump and smashed him, you know, all the way down to the ground."
7. Despite immediate pain in his head, neck, shoulders, back and ribs, plaintiff worked the rest of the day. After work, plaintiff went immediately to his motel room, where he received wound care for scrapes and burns on his back from his fiancée, Jamie Cockerham.
8. On December 1, 2003, plaintiff presented to Dr. Jessup at U.S. HealthWorks Medical Group in Fayetteville for treatment of his injuries, which included rib and back pain. Dr. Jessup documented that plaintiff had palpable tenderness and abrasions from the upper lumbar region to the right lower thoracic region posteriorly.
9. Dr. Jessup treated plaintiff for thoracic contusions, multiple abrasions and rib contusions. Plaintiff's abrasions were cleaned, x-rays were ordered and plaintiff was given pain medication. Dr. Jessup also assigned modified work restrictions of no lifting more than ten pounds, no forceful pushing or pulling, no bending or stooping, no kneeling or squatting and no climbing ladders. *Page 5 
10. On December 18, 2003, plaintiff last presented to Dr. Jessup at which time she released plaintiff to return to work without restrictions, as she opined that plaintiff had reached maximum medical improvement. At her deposition, Dr. Jessup opined that plaintiff's back and rib injuries were caused by his accident at work. Dr. Jessup reported that plaintiff never complained of a head injury or any pain or discomfort related to his head.
11. On December 18, 2003, plaintiff returned to work. On or about December 20, 2003, plaintiff's supervisor, Felton Cockerham, instructed plaintiff to crawl under a low catwalk and pull out a section of steel I-beam approximately seven feet in length. When plaintiff told Mr. Cockerham that he was unable to do this because of his injuries, Mr. Cockerham informed plaintiff that he must either perform the task or leave the job site. As plaintiff felt he was unable to perform the work, plaintiff left the job site. Mr. Cockerham did not testify regarding the events of this incident as he had died prior to the hearing before the Deputy Commissioner. Since Dr. Jessup released plaintiff to return to full duty, without any restrictions as of December 18, 2003, the Full Commission finds that plaintiff was capable of performing the work assigned by defendant-employer on or about December 20, 2003 and that plaintiff voluntarily left his employment.
12. Plaintiff testified that after leaving work with defendant-employer, he worked sporadically for Mr. Early Cole on a chicken farm and earned wages in the amount of $10,121.00. At the hearing before the Deputy Commissioner, plaintiff was not working.
13. On February 5, 2005, plaintiff's father took him to Trinity Family Medicine because of ongoing problems. After examination, Dr. Boyette ordered an MRI of plaintiff's brain, which was performed on February 10, 2003. Thereafter, Dr. Boyette referred plaintiff to Dr. Rodney O. Leacock, a neurologist, at East Carolina Neurology. On March 2, 2005, plaintiff *Page 6 
presented to Dr. Leacock and reported his injury and the circumstances surrounding his accident. Plaintiff stated he experienced headaches, sleep disorders, fatigue, lethargy, dizziness and back pain. Dr. Leacock reviewed plaintiff's MRI, which was determined to be abnormal.
14. Plaintiff filed a Form 18 Notice of Accident to Employer and Claimof Employee, dated May 9, 2005, within the two-year period following his accident. Defendants filed a Form 28B noting the last payment date of medical compensation to be February 10, 2004. During the period plaintiff was treating for his job-related injuries, he applied for and was subsequently approved for Social Security Disability benefits.
15. As part of the Social Security application process, Dr. Leslie Reynolds, a neurologist, examined plaintiff. On January 31, 2006, plaintiff first presented to Dr. Reynolds, who opined that plaintiff did not have any physical deficits but that his deficits were cognitive. Plaintiff complained of anger outbursts, excessive sleeping alternating with not being able to sleep at all, depression and complaints of being numb all over his head and feeling as if he had worms in his eyes. Dr. Reynolds diagnosed plaintiff with bipolar disorder and closed head trauma.
16. On July 19, 2006, plaintiff presented to Dr. Jon K. Miller, an orthopedic surgeon for his ongoing back pain. Dr. Miller testified that plaintiff clearly reported that his symptoms relating to his low back pain began shortly after the November 26, 2003 work accident, when the large beam fell on plaintiff striking him on his back. X-rays revealed that plaintiff had a Grade II spondylolisthesis at the L5-S1 level. An MRI of the lumbar spine was ordered to further evaluate plaintiff's condition, which confirmed the spondylolisthesis at L5-S1, and revealed facet joint hypertrophy and severe foraminal stenosis at that level. Plaintiff was given restrictions on lifting, pulling and pushing and ordered to follow-up as needed, and in any event, to return *Page 7 
within a year for further evaluation. Dr. Miller opined that even though plaintiff was not seen in his office until July 2006, the length of time since the accident did not make it less likely that the November 26, 2003 accident caused or aggravated the symptoms for which he treated plaintiff.
17. On May 2, 2007, plaintiff presented again to Dr. Reynolds, at which time Dr. Reynolds detailed plaintiff's cognitive issues, as well as manic episodes. Dr. Reynolds again assessed plaintiff with a closed head injury and bipolar disorder, ordered a comprehensive neuropsychiatric evaluation and prescribed Depakote. On June 5, 2007, Dr. Reynolds re-examined plaintiff, with no change in the diagnosis.
18. At her deposition, Dr. Reynolds was questioned at length about whether plaintiff's condition could be related to his 1997 automobile accident rather than his 2003 work injury and whether his diagnosed bi-polar disorder could have developed independently from the November 2003 accident. When reviewed on direct and cross-examination, Dr. Reynolds' testimony was equivocal. Dr. Reynolds opined that there was no way to tell whether the 1997 automobile accident or the 2003 work injury was the cause of the abnormal 2005 MRI.
19. Dr. Reynolds testified that bipolar disorder could occur with or without trauma. Ultimately, Dr. Reynolds opined that she would like additional information in order to assess whether plaintiff's bipolar symptoms were related to his work injury in November 2003 or occurred independently. Dr. Reynolds noted that since there was an indication in the 1997 hospital report from the automobile accident that plaintiff was "impulsive," this could have been an indication of an early onset of bipolar disease, which may have occurred independently of the November 26, 2003 work accident. Further, Dr. Reynolds questioned, if plaintiff's trauma to his head from the November 26, 2003 work accident were as significant as plaintiff indicated, why were there not any subsequent complaints of headache. *Page 8 
20. Plaintiff continued to complain of worsening back pain and weakness in his lower extremities and was seen at Atlantic Orthopedics again on May 21, 2007. An x-ray revealed that plaintiff's spondylolisthesis may have progressed. Another MRI was ordered, and plaintiff was informed about surgical options.
21. On June 4, 2007, plaintiff returned to Dr. Miller, his orthopedic surgeon. Dr. Miller reviewed the recent MRI results, which showed high grade II spondylolisthesis, as well as severe degeneration at the L4-5 and L5-S1 levels. Dr. Miller recommended surgical intervention for plaintiff's injuries that included a decompression at L5 and a fusion. Dr. Miller opined that plaintiff's work accident did not cause the spondylolisthesis itself, but that it did cause plaintiff's condition to become symptomatic and necessitate the treatment, including surgery, which he recommended. Further, Dr. Miller testified that the steel beam striking plaintiff in the back more likely than not caused him to become symptomatic and that plaintiff's complaints of regular low back pain since the accident were consistent with an aggravation or exacerbation of plaintiff's spondylolisthesis.
22. As of the hearing before the Deputy Commissioner, plaintiff continued to treat with Dr. Reynolds and Dr. Miller and has not worked.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 26, 2003, plaintiff sustained an injury by accident to his back arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). *Page 9 
2. Where an accident aggravates or exacerbates a pre-existing condition, it is compensable. Toler v. Black Decker,134 N.C. App. 695,518 S.E.2d 547 (1999). As such, based upon the competent evidence of record and the expert opinion of Dr. Miller, plaintiff's accident of November 26, 2003 aggravated or exacerbated his pre-existing condition of spondylolisthesis and said condition is compensable.
3. There is insufficient medical evidence to conclude that plaintiff's bipolar disorder is causally related to the injury by accident giving rise to this claim. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980);Anderson v. Motor Co., 233 N.C. 372, 64 S.E.2d 265 (1951).
4. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee *Page 10 
and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. PerdueFarms, Inc., supra.
5. In the present case, plaintiff reached maximum medical improvement on December 18, 2003 when Dr. Jessup released him to return to work without any restrictions. As the Full Commission has concluded that plaintiff's bipolar disorder is not causally related to the injury by accident giving rise to this claim, any disability related thereto would not be compensable. As such, plaintiff did not meet his burden to prove that after December 18, 2003 he was unable to obtain employment as a result of his work-related injury and therefore is not entitled to temporary total disability compensation. N.C. Gen. Stat. § 97-29;Russell v. Lowes Product Distribution, supra.
6. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury to his back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident to his back, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
 2. Defendants shall bear the costs of this matter. *Page 11 
This the __ day of June 2008.
S/________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/________________ BUCK LATTIMORE COMMISSIONER
 S/________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1