* * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 * * * * * * * * * * * RULINGS ON MOTIONS
The Full Commission hereby enters the following rulings on motions presented: *Page 2 
 PLAINTIFF'S RENEWED OBJECTION MOTION IN LIMINE
Plaintiff moved, pursuant to Rule 703, Rule 802, and Rule 803 of the North Carolina Rules of Evidence, for an Order excluding the opinion expressed by Dr. Dan Chartier that Plaintiff's psychological condition "would not be covered under her workers' comp claim," and for an Order striking any testimony that Plaintiff purportedly expressed a desire to stay at home and not return to work, on the grounds that these opinions do not meet the required standards for expert witness opinions. After consideration of the written and the oral arguments of the parties, Plaintiff's Motion is hereby DENIED.
 MOTION TO INCLUDE ADDITIONAL STIPULATED MEDICAL RECORDS
Defendants moved, pursuant to the terms of the Pre-trial Agreement executed by the parties on April 10, 2008, for an Order allowing the inclusion of certain additional, stipulated medical records attached as an exhibit to Defendants' Motion, on the grounds that the parties stipulated to these medical records in their Pre-trial Agreement, and that Defendants provided these medical records to the Deputy Commissioner and requested that they be included, upon discovering that they did not get included in the paginated set of exhibits provided at the hearing before the Deputy Commissioner. Plaintiff objected to Defendants' Motion, pursuant to Rule 701(6) of the Workers' Compensation Rules of the North Carolina Industrial Commission, stating that Plaintiff was unable to rely upon, utilize, or respond to these medical records in the presentation of her case. After consideration of the written and the oral arguments of the parties, Defendants' Motion is hereby GRANTED. Accordingly, the stipulated medical records attached as an exhibit to Defendants' Motion shall be attached to the end of the transcript after page 317.
 * * * * * * * * * * * *Page 3 
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction of the subject matter of these proceedings.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The parties are correctly designated and there is no question as to the joinder or the non-joinder of any party.
4. Defendants admitted Plaintiff's claim for a low back strain on or about August 30, 2006 via a Form 60 dated September 18, 2007.
5. An employment relationship existed between the parties on August 30, 2006.
6. Plaintiff's average weekly wage at all times relevant to these proceedings was $567.30, and Plaintiff has been receiving temporary total disability compensation in the amount of $378.22 since the date of incident.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1):
 i. North Carolina Industrial Commission forms and filings;
 ii. Plaintiff's medical records from:
 Carolina Back Institute;
 Raleigh Radiology Cedarhurst;
 NovaCare Rehabilitation; *Page 4 
 Prevail Program;
 iii. Plaintiff's prior medical records from:
 Raleigh MRI Center;
 Raleigh Family Practice, P.A.;
 Stephen I. Moore, III, M.D., P.A.;
 Family Medical Associates of Raleigh;
 Carolina Back Institute;
 iv. Triangle Spine and Back Care Center — March 29, 2007 and March 11, 2008 reports of independent medical evaluations;
 v. Job Ready Services, L.L.C. — August 3, 2007 functional capacity evaluation;
 vi. Intracorp — Case management records;
 vii. Discovery responses;
 viii. Printout of benefits received by Plaintiff.
 b. Plaintiff's Exhibit One (1) — Accident report dated August 30, 2006.
 * * * * * * * * * * * ISSUES
The issues to be determined are:
1. Whether Defendants withheld prescribed treatment for Plaintiff's disabling depression and anxiety?
2. Whether Plaintiff's ongoing back condition is causally related to her August 30, 2006 work injury? *Page 5 
3. Whether Plaintiff continues to be disabled as a result of her August 30, 2006 work injury?
4. Whether Plaintiff is entitled to any further workers' compensation benefits as a result of her August 30, 2006 work injury?
 * * * * * * * * * * *
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 54 years old, with a date of birth of July 20, 1954, and was working for Defendant-Employer as an insurance certificate analyst at the time of her August 30, 2006 work injury that is the subject of this claim. After graduating from high school, Plaintiff took some computer courses and then completed a two (2) year course of study in interior design, although she never worked in the field of interior design. Plaintiff's employment history includes working as a waitress, a clothing store clerk, and a bookkeeper for her husband's business. In 2000, Plaintiff began working for Defendant-Employer, where her job duties included communicating with Medicaid recipients via telephone and written correspondence, and maintaining files for these Medicaid recipients.
2. Prior to her injury, Plaintiff had a long-standing history of lower back problems necessitating a lumbar laminectomy at the L5-S1 level of the spine in May 1996 and a repeat lumbar laminectomy at the L5-S1 level in January 1997. These lumbar laminectomies did not provide lasting relief, and since 1998 Plaintiff has been receiving treatment from various health care providers for her lower back pain. *Page 6 
3. Since December 2001, Plaintiff has been receiving treatment for lower back pain at Carolina Back Institute in Cary, North Carolina. Dr. Catherine Ann Duncan and other health care providers at Carolina Back Institute attempted to treat Plaintiff's condition with a regimen of various narcotic and non-narcotic medications, physical therapy, routine non-steroidal trigger point injections, and a series of transforaminal epidural steroid injections.
4. Plaintiff also has a pre-existing history of depression. Since at least 2002, Plaintiff reported symptoms of, and received medications for, depression related to lower back pain. Plaintiff also received prescriptions for Ambien due to difficulty with sleeping.
5. On August 25, 2005, Dr. Christopher Jon Godbout became Plaintiff's treating physician at Carolina Back Institute. Plaintiff complained to Dr. Godbout of increasing pain and weakness, falls, and numbness in her right and left lower extremities. Dr. Godbout treated Plaintiff with multiple medications, including several types of narcotics for pain, Ambien for sleep disturbance, Lexapro for depression, non-steroidal trigger point injections, and epidural steroid injections.
6. On September 7, 2005, Plaintiff underwent lumbar magnetic resonance imaging (MRI) which Dr. Godbout interpreted as revealing an asymmetric disc protrusion at the L3-L4 level of the spine that was causing moderate neural foraminal stenosis, as well as degenerative disc disease and scarring from her prior laminectomies at the L5-S1 level of the spine.
7. On August 1, 2006, Dr. Godbout increased Plaintiff's dosage of Neurontin, continued her on her other medications, administered more trigger point injections, and recommended a sacro-iliac steroid injection if her lower back pain continued to increase. The medical evidence does not indicate that Plaintiff received work restrictions, despite the increase in medication dosage and the transforaminal epidural steroid injections for lower back pain. *Page 7 
8. While at work on August 30, 2006, Plaintiff tripped over an extension cord and fell forward onto the floor, landing on her hands and knees. Later this same day, Plaintiff returned to Carolina Back Institute, where Dr. Godbout's physician's assistant, Kathryn Elizabeth Odom saw her. Plaintiff reported an increase in back pain radiating into the right leg after tripping over an extension cord at work and falling. Physician's assistant Odom diagnosed Plaintiff with a thoracic and lumbar sprain/strain, bilateral sacro-iliac joint dysfunction, right greater than left, degenerative disc disease of the lumbar spine, myofascial pain at the center of the thoracic and lumbar regions, and status-post lumbar laminectomy. Physician's assistant Odom administered non-steroidal trigger point injections, continued Plaintiff on her same pre-injury medications, with the addition of Zanaflex, a muscle relaxer, and Prednisone, an anti-inflammatory, and took her out of work until September 5, 2006.
9. On September 18, 2006, Defendants accepted Plaintiff's August 30, 2006 work injury as compensable via a Form 60. The Form 60 describes the August 30, 2006 work injury as "a low back strain" that Plaintiff suffered "as she tripped on an extension cord at work." Defendants began paying Plaintiff temporary total disability compensation in the amount of $378.22 per week.
10. On September 20, 2006, Plaintiff underwent another lumbar MRI. Plaintiff continued to be seen by physician's assistant Odom, and continued to receive conservative treatment. However, Plaintiff continued to complain of severe back and right leg pain, and by the September 29, 2006 visit with physician's assistant Odom, Plaintiff presented with new complaints of parathesias (numbness).
11. On November 8, 2006, Dr. Godbout compared the results of Plaintiff's September 20, 2006 MRI to the September 7, 2005 MRI, and concluded that there were no significant *Page 8 
interval changes. He noted, however, that Plaintiff reported "a substantial increase in her right-sided low back pain" following the August 30, 2006 work injury, as well as parathesias and weakness in her right leg and foot and "near falls." Dr. Godbout continued Plaintiff on her medications, but added Lyrica, and recommended physical therapy, a spinal cord stimulator trial, and a sacro-iliac steroid injection under fluoroscopic imaging, which he performed on November 17, 2006. Dr. Godbout kept Plaintiff out of work, and gave her a 20-pound lifting restriction.
12. On December 21, 2006, Plaintiff next saw Dr. Godbout, at which time Plaintiff continued to complain of right lumbar radiculitis, with the pain radiating all the way down to her right foot. Dr. Godbout continued Plaintiff on the same treatment plan, including physical therapy, trigger-point injections, transforaminal epidural steroid injections, and a spinal cord stimulator trial. Dr. Godbout also recommended a surgical consultation, a consultation with a pain psychologist, and the addition of the medication Topamax.
13. On February 7, 2007, Plaintiff next saw Dr. Godbout. Dr. Godbout noted that Plaintiff had "no improvement after her epidural steroid injection," that "she is becoming more depressed," and that she was requesting an increase in her anti-depressant medication. In addition, Dr. Godbout noted that several of his recommendations were not being approved by Defendant-Carrier, including the surgical consultation and the consultation with a pain psychologist. Because of Plaintiff's "substantial weakness with dorsiflexion and plantar flexion," Dr. Godbout recommended that she not drive at all, that she could return to work only if someone else drove her, and that she be restricted to lifting no more than 10 pounds.
14. On March 29, 2007, Plaintiff saw Dr. William Francis Lestini, an orthopaedist, for an independent medical examination at the request of Defendants. Dr. Lestini recommended that Plaintiff try to avoid surgery if she could tolerate her pain, and opined that a spinal cord *Page 9 
stimulator would not likely provide long-term relief of her lower back pain. Dr. Lestini also noted that Plaintiff had "a substantial problem" with chronic, ongoing lower back and leg pain prior to her August 30, 2006 work injury, and that while it was likely that the work injury exacerbated these pre-existing complaints, it "clearly did not cause these symptoms to occur de novo." In discussing Plaintiff's pre-existing symptoms, Dr. Lestini further opined that he did not believe that "a substantial difference occurred at the time of the 8-30-2006 event."
15. On June 13, 2007, Dr. Godbout noted that he agreed with Dr. Lestini's opinions that Plaintiff was not a candidate for surgery or a spinal cord stimulator. Dr. Godbout also noted that, despite Plaintiff's complaints of pain, she did not appear to be in any substantial pain, that her pain score seemed "to be out of proportion to her clinical examination," and that "this case has a poor outcome, as I think there are some factors outside of the pathophysiology of the lumbar spine." As a result, Dr. Godbout recommended that Plaintiff either undergo a work conditioning program or a functional capacity evaluation.
16. On August 3, 2007, Plaintiff underwent a functional capacity evaluation. The evaluator concluded that Plaintiff exhibited significant inappropriate illness behaviors, a self-limited and inconsistent effort that rendered the functional capacity evaluation invalid, and that there was a fair probability that Plaintiff could safely perform at a higher level. The evaluator recommended that permanent work restrictions not be based on the functional capacity evaluation results.
17. Following review of the functional capacity evaluation results, Dr. Godbout opined that Plaintiff could likely return to a sedentary job. However, because there was no improvement in Plaintiff's condition with any of the treatment rendered, Dr. Godbout referred her for an evaluation with the Prevail Program, which is a pain management program affiliated *Page 10 
with Carolina Back Institute. The Prevail Program offers evaluation, treatment, and monitoring by a physical medicine and rehabilitation physician, a psychologist, and a physical therapist. Plaintiff attended the Prevail Program from January 7, 2008 through January 31, 2008.
18. Dr. Duncan, Plaintiff's pre-injury treating physician at Carolina Back Institute, was the attending physical medicine and rehabilitation physician during Plaintiff's treatment at the Prevail Program. At the conclusion of the Prevail program, Dr. Duncan assigned Plaintiff a five (5) percent permanent partial disability rating to her back. As of February 4, 2008, Dr. Duncan released Plaintiff with restrictions of no lifting over 10 pounds, no constant walking, no frequent bending, and an allowance for five (5) minute breaks every hour.
19. On February 28, 2008, Plaintiff next saw Dr. Godbout, at which time he placed her at maximum medical improvement, deferred all of Plaintiff's work restrictions to those formulated through the Prevail Program, and further recommended that she see a psychiatrist for her depression.
20. Dr. Godbout opined that Plaintiff sustained a back sprain or strain as a result of her August 30, 2006 work injury, and that the work injury caused a temporary exacerbation of her pre-existing lower back and leg pain. Dr. Godbout was of the opinion that as of February 28, 2008, Plaintiff was at maximum medical improvement, and that she was "back to baseline before the fall" at work on August 30, 2006. Dr. Godbout did not release Plaintiff because, in his opinion, she required ongoing treatment. Dr. Godbout felt that he could relate some of Plaintiff's current disability and work restrictions to the August 30, 2006 work injury because his clinical notes do not reflect her true work abilities, or her ability to function on a daily basis. Dr. Godbout felt that the prolonged lower back and leg pain Plaintiff endured following her August 30, 2006 work injury significantly contributed to her increased depression, and that the opinions *Page 11 
of Dr. Krasner and Dr. Dan Chartier, the psychologist who treated Plaintiff at the Prevail Program, were "authoritative" on the issue of her psychological issues.
21. Dr. Duncan agreed with Dr. Godbout's opinion that Plaintiff suffered a temporary exacerbation of her pre-existing lower back condition after her August 30, 2006 work injury, after which Plaintiff recovered to her baseline condition from before the work injury. Dr. Duncan was of the opinion that Plaintiff returned to her pre-injury baseline as of the date she initially evaluated Plaintiff for the Prevail Program in December 2007, and that Plaintiff's August 30, 2006 work injury did not necessitate the work restrictions she assigned to Plaintiff at the conclusion of the Prevail Program. The Full Commission gives greater weight to the opinion of Dr. Godbout on when Plaintiff reached maximum medical improvement and her condition returned to baseline.
22. Dr. Chartier, the psychologist who treated Plaintiff at the Prevail Program, noted during the initial screening that several of Plaintiff's prior health care providers identified issues with depression, and with "manifesting depressive symptoms." In addition, the psychometric testing that Dr. Chartier performed on Plaintiff identified responses consistent with individuals "who are extremely sensitive to bodily functions," and who may exhibit "hypochondrial complaints." During the course of the Prevail Program, Dr. Chartier met with Plaintiff two (2) times a week, and he also met with Dr. Duncan and the physical therapist weekly in order to discuss Plaintiff's progress.
23. It was Dr. Chartier's opinion that Plaintiff had "pre-existing personality issues and psychological confounding factors of depression" that were not "a sole source of causation" for her August 30, 2006 work injury. According to Dr. Chartier, Plaintiff's poor outcome in the Prevail Program was partly due to her "negativistic" personality and her "personality style" of *Page 12 
"passive aggressive resistance," all of which "predated" her work injury, going back to her childhood and adolescent development. Dr. Chartier agreed, however, that "historically," the August 30, 2006 work injury is what Plaintiff "tagged her current level of distress to," that before the work injury, she was able to work and take care of her family, but afterward, she was not able to do any of this, and that he was not aware of any other event that precipitated her life being out of balance. Dr. Chartier recommended that Plaintiff receive more intensive psychotherapy for the personality disorders and depression that she has, but was of the opinion that such treatment would not be "directly related" to her August 30, 2006 work injury. Dr. Chartier was of the opinion that there was "no contraindication" to Plaintiff's ability to return to work that was directly attributable to her August 30, 2006 work injury.
24. Dr. Krasner is a psychologist with a specialty in neuro-psychology who saw Plaintiff upon referral from Dr. Godbout. Dr. Krasner initially began treating Plaintiff in March 2007, and as of his deposition on June 27, 2008, continued to treat her for diagnoses of depression and anxiety. Dr. Krasner's treatment of Plaintiff includes cognitive behavioral techniques to help her deal with the pain she has, providing support and techniques on how to deal with her anxiety and depression, and supplementing the treatment she received from Carolina Back Institute. Plaintiff's symptoms during Dr. Krasner's treatment of her included sadness, lack of energy, lethargy, "blue" feelings, difficulties with sleep, and lack of interest in activities in motivating herself to undertake activities. Dr. Krasner did not think that Plaintiff was at maximum medical improvement, and he opined that she was unable to work during the time he treated her, including the last time he saw her in June 2008. Dr. Krasner was aware that Plaintiff was able to work before her August 30, 2006 work injury, was unable to work following it, and secondary to the work injury, she developed an emotional response to it with increased *Page 13 
depression and anxiety. After the August 30, 2006 work injury, Dr. Krasner was of the opinion that Plaintiff was unable to work, from a psychological standpoint, due to the emotional response that she developed in response to the work injury, including increased depression and anxiety. Dr. Krasner further opined that Plaintiff is actually more depressed than what she first reported to him, and that her "stoic" personality and inability to initially "open up" with him in psychotherapy sessions made it difficult for him to initially gauge her true level of depression.
25. Dr. Krasner also opined that but for the August 30, 2006 work injury, Plaintiff would likely still be working, that the work injury caused a level of depression which incapacitates her from working in any employment due to her increased pain and loss of function, and that she is not at maximum medical improvement with respect to her depression and anxiety. Dr. Krasner felt that Plaintiff would benefit from psychiatric treatment, in addition to psychotherapy, in order to monitor her psychiatric medications. Although Dr. Krasner admitted on cross-examination that because he did not know what Plaintiff's psychological condition was before the August 30, 2006 work injury, her condition could have been just as bad then as when he began treating her, and that Dr. Chartier was in a better position to evaluate Plaintiff's prior psychological condition, since he reviewed her records preceding the work injury, he also opined that Plaintiff continues to have psychological symptoms since the work injury, whereas her previous history was more intermittent, according to Plaintiff.
26. The Full Commission gives greater weight to the opinion testimony of Dr. Krasner over any contrary opinions of Dr. Chartier with respect to the contribution of Plaintiff's August 30, 2006 work injury to her current level of depression and anxiety, and with respect to her disability and need for further psychological/psychiatric treatment relative to her depression and anxiety. *Page 14 
27. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's August 30, 2006 work injury aggravated her pre-existing psychological condition, causing a level of depression which incapacitates her from working in any employment, due to her increased pain and loss of function, and that Plaintiff is not at maximum medical improvement with respect to her depression and anxiety. Further, the Full Commission finds that Plaintiff was unable to work in any employment due to her depression and anxiety since at least March 2007, and would benefit from psychiatric treatment, in addition to continued psychotherapy, in order to monitor her psychiatric medications.
28. The Full Commission finds, based upon the greater weight of the evidence, that there is insufficient evidence in the record to establish that Plaintiff's August 30, 2006 work injury is either causing or contributing to her ongoing lower back and right lower extremity pain and numbness. Although Dr. Godbout opined that at least some of Plaintiff's current disability and work restrictions are related to the August 30, 2006 work injury, and that she requires further treatment with respect to her chronic lower back and right extremity pain and numbness, he is also of the opinion that as of February 28, 2008, Plaintiff was at maximum medical improvement, and that she was "back to baseline before the fall" at work with respect to her back condition.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the full commission enters the following:
 CONCLUSIONS OF LAW *Page 15 
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer on August 30, 2006 to her lower back. N.C. Gen. Stat. § 97-2(6) (2008).
2. "When a pre-existing, nondisabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment or by an occupational disease so that disability results, then the employer must compensate the employee for the entire resulting disability even though it would not have disabled a normal person to that extent." Toler v. Black and Decker,134 N.C. App. 695,701,518 S.E.2d 547,551 (1999),citing, Morrison v. BurlingtonIndustries, 304 N.C. 1, 282 S.E.2d 458 (1981). In the case at bar, although Plaintiff had a pre-existing history of depression, she continued to work and carry on her normal life activities despite the depression. Once Plaintiff developed increased pain due to her August 30, 2006 work injury, her symptoms and level of depression increased, and in addition, she also developed complaints of anxiety after the work injury. Thus, the depression and anxiety that Plaintiff continued to suffer from are both compensable aggravations of her August 30, 2006 work injury. Id.
3. There is insufficient evidence in the record to establish that Plaintiff's August 30, 2006 work injury is causing or contributing to her ongoing lower back condition after February 28, 2008. Defendants have established that Plaintiff's disability related to her work-related back injury ended as of February 28, 2008, when her back condition returned to pre-injury baseline. Although Dr. Godbout opined that at least some of Plaintiff's current disability and work restrictions are related to the August 30, 2006 work injury, and that she requires further treatment with respect to her chronic lower back and right extremity pain and numbness, the greater weight of the evidence establishes that as of at least February 28, 2008, Plaintiff was at maximum *Page 16 
medical improvement, and that she was "back to baseline before the fall" at work with respect to her lower back condition.
4. In order to prove disability, Plaintiff must prove that she is unable to earn the same wages she earned before her August 30, 2006 work injury, either in the same employment or in other employment.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet this burden in one (1) of four (4) ways:
 (1) the production of medical evidence that that [s]he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment [citation omitted]; (2) the production of evidence that [s]he is capable of some work, but that [s]he has, after a reasonable effort . . . been unsuccessful in . . . obtain[ing] employment [citation omitted]; (3) the production of evidence that [s]he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment [citation omitted]; or (4) the production of evidence that [s]he has obtained other employment at a wage less than that earned prior to the injury [citation omitted]. Russell v. Lowes Production Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
Under prong one (1) of Russell v. Lowes Production Distribution, Plaintiff may prove disability by the production of medical evidence that [s]he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment. Russell v.Lowes Production Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In the case at bar, Dr. Paul R. Krasner opined, and the Full Commission found as fact, that Plaintiff's August 30, 2006 work injury aggravated her pre-existing psychological condition, causing a level of depression which incapacitates her from working in any employment, due to her increased pain and loss of function, that Plaintiff is not at maximum medical improvement with respect to her depression and anxiety, and that Plaintiff was unable to work in any employment due to her depression and anxiety since at least March 2007 and remains unable to work in any employment. Thus, *Page 17 
Plaintiff proved that she is medically disabled under prong one (1) ofRussell v. Lowes Production Distribution. Id.
5. Plaintiff is entitled to temporary total disability compensation at the rate of $378.22 per week from August 30, 2006 through the present and continuing until further Order of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29 (2008).
6. Plaintiff is not at maximum medical improvement with respect to her compensable depression and anxiety conditions, and she requires further medical, psychiatric, and psychological treatment, including, but not limited to further medical treatment for her ongoing chronic lower back and right lower extremity pain, further psychological treatment for her depression and anxiety conditions, and psychiatric treatment in order to monitor her psychiatric medications. Such medical, psychiatric, and psychological treatment is necessary in order to effect a cure, provide relief, and/or lessen her period of disability. N.C. Gen. Stat. § 97-25
(2008).
7. Plaintiff is entitled to have Defendants pay for all medical treatment reasonably related to her compensable injury and reimburse her for any out-of-pocket expenses she incurred that are related to her August 30, 2006 work injury, including, but not limited to treatment rendered by Dr. Paul R. Krasner.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay to plaintiff temporary total disability compensation at the rate of $378.22 per week from August 31, *Page 18 
2006 until further Order of the North Carolina Industrial Commission. Defendants are given a credit for the indemnity compensation they have already paid to Plaintiff.
2. Defendants shall pay all medical, psychiatric, and psychological expenses incurred or to be incurred as a result of Plaintiff's August 30, 2006 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff under paragraph one (1), above. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of any accrued compensation owed to Plaintiff and thereafter, every fourth (4th) check from future compensation due Plaintiff.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of May 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________ DANNY LEE McDONALD COMMISSIONER
S/___________________ STACI T. MEYER COMMISSIONER