ALMA JEAN CALLOWAY, Employee, Plaintiff v. MEMORIAL MISSION HOSPITAL, Employer, SPECIALTY INSURANCE SERVICES, INC., Servicing Agent, Defendants

No. COA99-402

(Filed 18 April 2000)

### 1. Workers' Compensation— findings of. fact—drafted by plaintiff's attorney—independent decision made by Commission

The Industrial Commission did not err in adopting the findings of fact from the proposed findings written by plaintiff's attorney because the Commission can request one side or the other to prepare the proposed opinion and award so long as the Commission made its own decision.

### 2. Workers' Compensation— pre-existing psychiatric problem— aggravated by work-related injury—competent evidence

Even though plaintiff-employee had a pre-existing history of psychiatric problems and her work-related injury was a physical one, the Industrial Commission did not err in awarding plaintiff compensation for aggravation of her psychiatric problems because there is competent evidence in the record revealing that a psychiatrist testified that plaintiff's back injury in and of itself caused her psychiatric problems, the injury was very stressful to plaintiff and viewed as potentially catastrophic, and the injury contributed to the severity of the relapse.

### 3. Workers' Compensation— credibility—determination by full Commission

The Industrial Commission did not assign undue weight to the opinion testimony of plaintiff-employee's treating psychiatrists in awarding plaintiff compensation for psychiatric problems because: (1) a physician's opinion testimony with respect to causation is not rendered incompetent unless his opinion is based on mere speculation, and the fact that plaintiff herself might have

CALLOWAY v. MEMORIAL MISSION HOSP.

[137 N.C. App. 480 (2000)]

been unbelievable and her physicians might have acknowledged this lack of credibility does not transform their opinion into one based upon sheer speculation; and (2) the full Commission could consider the opinion testimony and assign whatever weight it deemed appropriate.

Appeal by defendants from opinion and award filed 23 November 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 16 February 2000.

*Ganly Ramer Finger Strom & Fuleihan, by Thomas F. Ramer, for plaintiff-appellee.*

*Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Allan R. Tarleton, for defendant-appellants.*

LEWIS, Judge.

This case falls within a growing number of cases on appeal in which the Full Commission has reversed or disregarded the Deputy Commissioner's findings and substituted its own judgment as to an employee's credibility. *See, e.g., Scurlock v. Durham County Gen. Hosp.,* 136 N.C. App. 144, 523 S.E.2d 439 (1999); *Toler v. Black & Decker,* 134 N.C. App. 695, 518 S.E.2d 547 (1999); *Sanders v. Broyhill Furniture Industries,* 124 N.C. App. 637, 478 S.E.2d 223 (1996), *disc. review denied,* 346 N.C. 180, 486 S.E.2d 208 (1997). Nonetheless, since our Supreme Court, in *Adams v. AVX Corp.,* 349 N.C. 676, 509 S.E.2d 411 (1998), interpreted N.C. Gen. Stat. § 97-85 such that the Full Commission need not give any deference, indeed consideration, to the Deputy Commissioner's credibility findings, the subject has been sharpened.

Our federal courts have long recognized the need to accord significant weight to any determinations administrative hearing officers make that are based solely on witness demeanor and credibility. *See, e.g., Ryan v. Commodity Futures Trading Comm'n,* 145 F.3d 910, 918 (7th Cir. 1998) ("The Commission must attribute significant weight to an ALJ's findings based on a witness's demeanor because it does not have the opportunity to observe a testifying witness."); *NLRB v. Stor-Rite Metal Prods., Inc.,* 856 F.2d 957, 964 (7th Cir. 1988) ("Because only the ALJ can view the demeanor of the witnesses, any of the ALJ's findings that turn on express or implied credibility determinations take on particular significance on review."); *Kopack v. NLRB,* 668 F.2d 946, 953 (7th Cir. 1982) ("One must attribute significant weight to

CALLOWAY v. MEMORIAL MISSION HOSP.

[137 N.C. App. 480 (2000)]

an ALJ's findings based on demeanor because neither the Board nor the reviewing court has the opportunity similarly to observe the testifying witnesses."); *Penasquitos Village, Inc.*, 565 F.2d 1074, 1078-79 (9th Cir. 1977) ("Weight is given the administrative law judge's determinations of credibility for the obvious reason that he or she 'sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records.' ") (citation omitted).

In the workers' compensation setting, at least twelve states have now borrowed from the federal system and judicially established a requirement that places greater weight on any hearing officer's findings that hinge on credibility. 8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, § 80.12(c)(1),(c)(2),(d) (1999 & Supp. 1998). Another six states have, at least to some degree, done so statutorily. *Id.* § 80.12(c)(3), (5)-(9). Nonetheless, we are bound by decisions of our Supreme Court. Until either that body or the General Assembly acts, we must therefore consider the present appeal in light of *Adams*.

This case contains a complex and confusing web of facts involving interrelated claims of physical injuries, psychiatric problems, and alleged inappropriate employer actions. In order to untangle this web, the following rather lengthy recitation of facts is necessary.

Plaintiff worked in the materials management department of defendant Memorial Mission Hospital ("the Hospital"). Her job duties involved delivering various medical supplies to different departments throughout the Hospital. On 6 August 1996, while unloading a box of dialysis bags, plaintiff twisted her back. She subsequently checked herself in to the emergency room, complaining of pain in her upper back. At this time, she was not experiencing any pain in her lower back. The emergency room diagnosed her as having acute back pain and restricted her to light duty work. Plaintiff did not report to work the following two days and did not return to work until August 9. Upon her return, she continued to experience pain in her upper back, and she began to feel pain in her lower back as well. She went to the emergency room again, whereupon she was referred to an orthopaedist. Eventually, plaintiff came to see Dr. Eric Rhoton, a neurosurgeon. Due to plaintiff's continuing complaints of upper and lower back pain, Dr. Rhoton recommended that plaintiff undergo a lumbar MRI.

Prior to her work accident, plaintiff had been placed on probation by her employer due to excessive absenteeism and tardiness.

Following her accident, plaintiff did not report to work on either August 26 or 27. These absences were unexcused. She did not show up for work again on September 3, 4, 5, or 6. Learning that she might be in trouble for not reporting to work, plaintiff visited Dr. Rhoton's office on September 6 and was given a note excusing her from work from September 4 through September 13 while Dr. Rhoton awaited authorization from defendants for the lumbar MRI he was recommending. The out-of-work note was not signed by Dr. Rhoton himself; instead his signature was just stamped on it by his office staff. In fact, plaintiff did not even see Dr. Rhoton that day.

On 10 September 1996, defendants informed Dr. Rhoton that they were denying authorization for the MRI. Defendants felt the MRI was unrelated to her work accident, given that plaintiff's initial complaints were only to her upper back and the MRI was for her lower back. Defendants, however, did not seek any clarification from Dr. Rhoton as to whether the MRI was in fact related to her injury before they denied authorization for it.

Even though plaintiff received the out-of-work note on September 6, she did not fax it to her employer (or otherwise contact her employer) until September 10, the same day defendants denied authorization for her MRI. Two days later, on September 12, the Hospital terminated plaintiff's employment. After specifically finding plaintiff to be not credible, the deputy commissioner concluded that her termination was due to continued absenteeism, in violation of her probationary status. The Full Commission disagreed, gave plaintiff the benefit of the doubt, and found her termination to be wrongful in that it was due to her work-related injury.

Following her injury and subsequent termination, plaintiff became quite depressed. Due to this acute depression and related suicidal ideations, plaintiff was admitted to Charter Hospital ("Charter") for psychiatric treatment. Prior to her work accident, plaintiff had a history of psychiatric problems, including anxiety attacks and depression. The Full Commission concluded that plaintiff's back injury and defendants' poor handling of her claim, especially their denial of authorization for her MRI, exacerbated these psychiatric problems that necessitated her treatment at Charter.

Plaintiff was discharged from Charter on 22 November 1996. With respect to her psychiatric problems, plaintiff has been able to work since that time but will require ongoing medical treatment. With respect to her physical injury in her back, Dr. Freeman Broadwell

concluded that, as of 16 January 1997, plaintiff had attained maximum medical improvement. He then assigned her a three percent (3%) permanent partial disability rating. Despite her being able to work, however, plaintiff has refused to look for employment since her discharge from Charter.

Based upon these facts, the Full Commission awarded plaintiff temporary total disability compensation for the period from 13 September 1996 until 22 November 1996. The Commission then awarded her permanent partial disability for a period of nine weeks. Finally, the Commission ordered defendants to pay all of plaintiff's medical expenses, including the lumbar MRI and the cost of hospitalization at Charter, as well as any future psychiatric expenses plaintiff may incur as a result of her ongoing treatment. From this opinion and award, defendants appeal.

As alluded to earlier, our standard of review in workers' compensation cases is quite narrow. Specifically, we are limited to the consideration of two questions: (1) whether the Full Commission's findings of fact are supported by competent evidence; and (2) whether its conclusions of law are supported by those findings. *Barham v. Food World*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). Under the first inquiry, the findings of fact are conclusive on appeal so long as they are supported by *any* competent evidence, even if other evidence would support contrary findings. *Adams*, 349 N.C. at 681, 509 S.E.2d at 414. Furthermore, any findings with respect to witness credibility are ultimately in the hands of the Full Commission, even though that body does not observe the witnesses or their demeanor, unless it orders a new hearing with witnesses; it did not here. *Id.* at 681, 509 S.E.2d at 413. Because our review of the record reveals some evidence to support the Full Commission's findings and conclusions, we must affirm its opinion and award.

[1] At the outset, defendants argue that the Full Commission did not fulfill its duty to review the entire record before making its ultimate findings. Defendants support this argument by pointing out that the Full Commission's findings are almost mirror images of the proposed findings submitted by plaintiff's counsel. We have previously addressed this argument and rejected it. *See Rierson v. Commercial Service, Inc.*, 116 N.C. App. 420, 422, 448 S.E.2d 285, 287 (1994) ("It is acceptable for the deputy commissioner to request one side or the other to prepare the proposed opinion and award so long as the deputy commissioner has made his own decision . . . ."). Again, our

CALLOWAY v. MEMORIAL MISSION HOSP.

[137 N.C. App. 480 (2000)]

only task on appeal is to assess the evidentiary basis for the findings, not their source.

[2] In another assignment of error, defendants argue that plaintiff was not entitled to compensation for her psychiatric problems, given that she had a pre-existing history of psychiatric problems and that her work-related injury was purely a physical one. Specifically, defendants contest the following findings by the Commission:

13. Plaintiff's initial complaints at the time of her accident focused on pain in her upper back, between her shoulder blades. Because Dr. Rhoton was recommending a lumbar MRI, defendant took the position that the MRI was not related to plaintiff's accident of 6 August 1998 and denied coverage for it. *However, defendant did not make any effort to seek clarification from Dr. Rhoton . . . .*

. . . .

23. At the time of her back injury, plaintiff was in an emotionally vulnerable condition. Plaintiff's emotional condition was exacerbated by the manner in which defendant handled her injury and claim, particularly the refusal to authorize the MRI which had been recommended by a treating physician.

24. Plaintiff's back injury and the manner in which it was handled by defendant were significant contributing factors in the development of her anxiety and depression which necessitated her hospitalization at Charter in September 1996.

(Emphasis added.) Defendants maintain that they were handling plaintiff's claim as they felt appropriate and should not be responsible for any psychiatric problems experienced by plaintiff as a result of the way they handled her claim. While we agree with defendants that an employer should not be punished for any psychological effects that result *entirely* from its *good faith* handling of a claim, ultimately that sentiment here can be of no consequence. Here, there was testimony that linked plaintiff's physical injury to the aggravation of her psychiatric problems *irrespective of* defendants' purported mishandling of her claim.

We have previously held that the aggravation of pre-existing psychiatric problems is compensable if that aggravation is caused by a work-related physical injury. *Toler*, 134 N.C. App. 701, 518 S.E.2d at 551. Here, Dr. Ralph Jones, one of plaintiff's treating

psychiatrists, testified that plaintiff's back injury in and of itself caused her psychiatric problems. Specifically, Dr. Jones testified, "The [physical] injury was very stressful [to plaintiff] and was viewed by her as potentially catastrophic." (Jones Dep. at 78.) He then continued as follows:

> Q: . . . Clearly the [physical] injury didn't cause the bipolar disorder but did the injury and any resulting stress, anxiety, or depression cause or contribute to the re-aggravation of the bipolar disorder?
>
> A: Yes, I think it contributed to the severity of the relapse.

(Jones Dep. at 78.) Dr. Jones also clarified that plaintiff's depression was unrelated to her termination from the Hospital as well. (Jones Dep. at 75). Thus, regardless of defendants' purported mishandling of plaintiff's claim and purported wrongful termination, there is competent evidence in the record to support the Full Commission awarding plaintiff compensation for the aggravation of her psychiatric problems.

[3] Next, defendants argue that, in awarding plaintiff compensation for her psychiatric problems, the Full Commission assigned undue weight to the opinion testimony of her treating psychiatrists, who opined that plaintiff's psychiatric problems were caused by the physical injury to her back. Defendants contend that their opinions were based on wholly unbelievable information given to them by plaintiff. The record is replete with examples that support defendants' argument. As previously pointed out, the deputy commissioner specifically found plaintiff to lack credibility. Dr. William Anixter too testified that plaintiff had not always been truthful to him in his treatment of her. (Anixter Dep. at 24.) Additionally, Dr. Jones testified that he could not necessarily believe all the information plaintiff told him in light of her psychiatric condition. (Jones Dep. at 35.) And finally, plaintiff admitted that her psychiatric condition affected her ability to remember. (T. at 53-54.)

As stated earlier, however, our task on appeal is not to weigh the respective evidence but to assess the *competency* of the evidence in support of the Full Commission's conclusions. A physician's opinion testimony with respect to causation is not rendered incompetent unless his opinion is based on mere speculation. *Ballenger v. Burris Industries*, 66 N.C. App. 556, 567, 311 S.E.2d 881, 887, *disc. review denied*, 310 N.C. 743, 315 S.E.2d 700 (1984). Although plaintiff herself

might have been unbelievable and her physicians might have acknowledged this lack of credibility, this does not transform their opinion into one based upon sheer speculation. Accordingly, the Full Commission could consider the opinion testimony of Dr. Anixter and Dr. Jones and assign their testimony whatever weight it deemed appropriate.

We have reviewed defendants' remaining assignments of error. In light of our limited standard of review as announced in *Adams v. AVX Corp.*, we find them also to be without merit.

It is not difficult to produce "some credible evidence" by lay witnesses or even expert witnesses for a very great and diverse number of positions. Indeed, practically any position can gain "credence" by finding an expert who agrees. But in every other legal configuration, the finder of fact who *observes* the witnesses is given authority to determine credibility—not a reviewing body such as the Full Commission. Although there are those rare cases where the Full Commission does hear evidence and confront the witnesses, this was not such a case. In fact, those cases are few and far between.

Affirmed.

Judges JOHN and EDMUNDS concur. .