MULAMBA LUMAMBA, Employee, Plaintiff-Appellant,
v.
TECHNOCOM BUSINESS SYSTEMS, Employer, and
HARTFORD INSURANCE COMPANY, Carrier, Defendants-Appellees,
No. COA08-61
Court of Appeals of North Carolina
Filed October 7, 2008
This case not for publication
Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner, for plaintiff-appellant.
York, Williams, Barringer, Lewis & Briggs, L.L.P., by Susan H. Briggs and Angela M. Easley, for defendants-appellees.
JACKSON, Judge.
Mulamba Lumamba ("plaintiff") appeals the denial of workers' compensation benefits for an occupational disease allegedly contracted while working for Technocom Business Systems("defendant"). For the reasons stated below, we affirm the opinion and award of the Industrial Commission.
Plaintiff, a native of Zaire (Democratic Republic of Congo), began working for defendant as a service technician on 25 January 2000. In his position, plaintiff worked on copiers, printers, and fax machines, with duties including trouble shooting, completing board repair work, running deliveries, refurbishing equipment (or rebuilding modules), and completing set-ups. Plaintiff used cleaning products while refurbishing equipment (or rebuilding modules) and occasionally on deliveries. Approximately ten percent of his day was spent cleaning machines.
When plaintiff used cleaning products, he worked in a room measuring approximately twenty-two and one half feet by sixteen and one half feet, with ten foot ceilings and doors on both ends. The room was centrally air conditioned, and the doors remained open most of the time. Other employees used the room and walked through it to access other areas of the business.
Plaintiff sought medical care on 5 May 2000 for symptoms he attributed to the breakup of his marriage. More than one year later he sought treatment for an acute myofascial strain. Another year later  more than two years after he began working for defendant  plaintiff sought treatment for injuries sustained in an automobile accident. Plaintiff was seen 3 October 2002 for gastrointestinal complaints.
On 19 March 2003  more than three years after he began working for defendant  plaintiff visited his family physician, Dr.Matthew D. Acampora ("Dr. Acampora"), with complaints of anxiety associated with breathlessness, chest pain, dizziness, insomnia, and rapid heart rate. The results of his examination were within normal limits. Plaintiff was seen again on 7 August 2003 with similar complaints, as well as headaches and upper back pain. His test results and physical examination were deemed normal. On 20 February 2004  more than six months after his last visit, and more than four years after he began working for defendant _ plaintiff visited Dr. Acampora and attributed his symptoms to working in an unventilated area with chemicals. Plaintiff's examination was "completely normal;" however, because he claimed to be exposed to "significant chemicals" at work, Dr. Acampora advised him not to return to work. Plaintiff saw Dr. Acampora again on 25 February 2004 with similar complaints. With the exception of elevated blood pressure, his physical examination failed to reveal anything out of the ordinary.
Plaintiff began treating with Dr. John C. McIver ("Dr. McIver") on 9 March 2004, complaining of headaches, dizziness, and light-headedness which worsened on days he worked and abated on the weekends. His physical examination was normal; however, because plaintiff complained of fume exposure, Dr. McIver felt the symptoms were work-related. Dr. McIver suggested that plaintiff intermittently remove himself from his work environment to a fresh air area, and that he might need to change occupations in the future. Plaintiff returned to Dr. McIver on 1 April, 15 April, and19 April 2004. Dr. McIver ordered an MRI of plaintiff's head and referred him to a chemical specialist.
Plaintiff's last day of work for defendant was 28 May 2004, with his last day of employment being 2 June 2004. On 2 June 2004, plaintiff presented to Dr. Allan Lieberman ("Dr. Lieberman") at the Center for Occupational and Environmental Medicine in Charleston, South Carolina. Dr. Lieberman diagnosed plaintiff with neurotoxicity, cardiotoxicity, and reactive intestinal dysfunction syndrome as a result of chemical exposure in the workplace.
On or about 16 June 2004, defendant filed a Form 19 with the Industrial Commission, reporting plaintiff's alleged injury or occupational disease. Plaintiff filed a Form 18 with defendant on or about 21 June 2004 notifying it of his workers' compensation claim. Defendant denied plaintiff's workers' compensation claim via Form 61 on or about 23 June 2004, and an amended Form 61 on or about 15 October 2004. Plaintiff requested that his claim be assigned for a hearing via Form 33 on or about 18 August 2004.
The matter was heard before a deputy commissioner on 8 August 2005. The depositions of Drs. McIver and Acampora were taken on 2 September 2005 and 8 November 2005, respectively. In addition, Dr. Marsha Dean Ford ("Dr. Ford")  board certified in medical toxicology  was deposed on 25 October 2005. An opinion and award was filed 6 April 2006, denying plaintiff workers' compensation benefits.
Plaintiff appealed to the Full Commission on 12 April 2006. On or about 4 October 2006, plaintiff brought a motion foradditional evidence, seeking to re-open his case to include Dr. Lieberman's deposition. Plaintiff's motion was granted by order filed 6 February 2007, and Dr. Lieberman was deposed on 7 May 2007. On 24 August 2007, the Full Commission filed its opinion and award, affirming with some modifications the opinion and award of the deputy commissioner. Plaintiff appealed to this Court on 28 August 2007.
We note that plaintiff has violated the North Carolina Rules of Appellate Procedure in that his brief fails to provide this Court with appropriate grounds for appellate review of this matter in violation of Rule 28(b)(4). The appellate rules are mandatory. State v. Hart, 361 N.C. 309, 311, 644 S.E.2d 201, 202 (2007) (citations omitted). However, as we do not deem this non-jurisdictional deficiency to be "gross" or "substantial," we caution counsel to be more vigilant in preparing future briefs for this Court. See Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co., 362 N.C. 191, 199, 657 S.E.2d 361, 366 (2008) ("Based on the language of Rules 25 and 34, the appellate court may not consider sanctions of any sort when a party's noncompliance with nonjurisdictional requirements of the rules does not rise to the level of a `substantial failure' or `gross violation.'")
Plaintiff first argues that the Industrial Commission did not apply the correct burden of proof to his occupational disease claim, citing ten assignments of error. We disagree.
"Appellate review of an award from the Industrial Commission is generally limited to two issues: (1) whether the findings offact are supported by competent evidence, and (2) whether the conclusions of law are justified by the findings of fact." Clark v. Wal-Mart, 360 N.C. 41, 43, 619 S.E.2d 491, 492 (2005) (citing Hendrix v. Linn-Corriher Corp., 317 N.C. 179, 186, 345 S.E.2d 374, 379 (1986)). "Under the first inquiry, the findings of fact are conclusive on appeal so long as they are supported by any competent evidence, even if other evidence would support contrary findings." Calloway v. Memorial Mission Hosp., 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000) (emphasis in original) (citing Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998)). "'[T]he [Industrial] Commission is the sole judge of the credibility of the witnesses and the [evidentiary] weight to be given their testimony.'"Adams v. AVX Corp., 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998) (quoting Anderson v. Construction Co., 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965)), reh'g denied, 350 N.C. 108, 532 S.E.2d 522 (1999). Findings of fact by the Commission may be set aside on appeal only in the complete absence of competent evidence to support them. Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000) (citing Saunders v. Edenton OB/GYN Ctr., 352 N.C. 136, 140, 530 S.E.2d 62, 65 (2000)). The Commission's conclusions of law are reviewed de novo. Griggs v. Eastern Omni Constructors, 158 N.C. App. 480, 483, 581 S.E.2d 138, 141 (2003).
The ten assignments of error cited with respect to this argument consist of challenges to ten of the Industrial Commission's findings of fact, two of its conclusions of law, andits final order. However, the question presented addresses only the conclusions of law. Further, plaintiff has failed to direct our attention with reason, argument, or legal authority to what statements in the challenged findings of fact are not supported by competent evidence of record. "Assignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R. App. P. 28(b)(6) (2007). Therefore, the assignments of error challenging the Industrial Commission's findings of fact are deemed abandoned.
Pursuant to North Carolina General Statutes, section 97-53, several enumerated diseases and conditions are "deemed to be occupational diseases within the meaning of [the Workers' Compensation Act]." N.C. Gen. Stat. § 97-53 (2007). Among the enumerated diseases or conditions are: manganese poisoning; poisoning by carbon bisulphide, menthanol, naphtha or volatile halogenated hydrocarbons; and compressed-air illness. N.C. Gen. Stat. § 97-53(5), (9), (11) (2007). In addition, the statute provides a catch-all category consisting of "[a]ny disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment." N.C. Gen. Stat. § 97-53(13) (2007).
Plaintiff appears to argue that because he was exposed to some of the chemicals enumerated within the statute, the Industrial Commission should have deemed his exposure an occupational disease. However, plaintiff has not been diagnosed with manganese poisoning; poisoning by carbon bisulphide, menthanol, naphtha or volatile halogenated hydrocarbons; or compressed-air illness. Plaintiff was diagnosed with neurotoxicity, cardiotoxicity, and reactive intestinal dysfunction syndrome _ none of which are enumerated diseases or conditions which are deemed occupational diseases by statute. Therefore, plaintiff was required to proceed pursuant to the "catch-all" provision of the statute.
In order to prevail pursuant to the "catch-all" provision, the burden of proof is on the claimant to show that
(1) the disease [is] characteristic of a trade or occupation, (2) the disease is not an ordinary disease of life to which the public is equally exposed outside of the employment, and (3) there [is] proof of causation, i.e., proof of a causal connection between the disease and the employment.
Hansel v. Sherman Textiles, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981) (citing Booker v. Medical Center, 297 N.C. 458, 468, 475, 256 S.E.2d 189, 196, 200 (1979)). "[T]he first two elements are satisfied if, as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." Rutledge v. Tultex Corp., 308 N.C. 85, 93-94, 301 S.E.2d 359, 365 (1983) (citing Booker v. Medical Center, 297 N.C. 458, 468, 472-75, 256 S.E.2d 189, 198-200 (1979)). "'The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for work[er]'s compensation.'" Id. at 94, 30 S.E.2d at 365 (quoting Booker v. Medical Center, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979)). Here, the Industrial Commission found the opinions of Drs. Acampora and Ford more persuasive than the opinion of Dr. Lieberman. As the Industrial Commission is the sole judge of credibility and the weight to be given to witness testimony, we are bound to follow the Industrial Commission's lead.
Dr. Ford  a board-certified expert in medical toxicology, having examined all of plaintiff's medical records, the Material Safety Data Sheets for the products plaintiff used, the products themselves, and plaintiff's workspace  opined that exposure to the chemicals to which plaintiff was exposed would not produce chronic neurological, gastrointestinal, or cardiac effects. She further opined that exposure to the chemicals to which plaintiff was exposed would not increase his risk for developing chronic neurological, gastrointestinal, or cardiac effects over that of the general public. Therefore, plaintiff failed to prove that his neurotoxicity, cardiotoxicity, and reactive intestinal dysfunction syndrome were occupational diseases within the meaning of the Workers' Compensation Act. This argument is without merit.
Plaintiff next argues that the Industrial Commission incorrectly discounted Dr. Lieberman's expert opinion. We disagree.
Plaintiff specifically challenges Finding of Fact number 14 which states, in pertinent part:
[(1)] Dr. Lieberman was tendered as an expert in occupational/non-occupational environmental medicine and toxicology. [(2)] Dr. Lieberman is board-certified in pediatrics. [(3)] Additionally, he testified that he took courses in occupational and environmentalmedicine until he "eventually felt a level of expertise." [(4)] Dr. Lieberman is not board-certified in toxicology, neurology, gastroenterology, or cardiology. [(5)] Dr. Lieberman testified that his opinions were "based upon 10,000 cases that [he had] reviewed." [(6)] When discussing his prior cases, Dr. Lieberman mentioned only mold and pesticide injuries, and stated that the majority of his cases are non-occupational.
Pursuant to our standard of review, this finding of fact is conclusive on appeal if each of the six statements contained therein is "supported by any competent evidence, even if other evidence would support contrary findings." Calloway, 137 N.C. App. at 484, 528 S.E.2d at 400 (emphasis in original). There is competent evidence of record to support those statements. As stated supra, the Industrial Commission is the sole judge of credibility and the weight to be given to witness testimony. Here, the Industrial Commission weighed the opinions of Drs. Acampora and Ford more heavily than the opinion of Dr. Lieberman. This assignment of error is without merit.
Finally, plaintiff argues that Findings of Fact numbers 1, 4, and 9 were not supported by competent evidence. These findings of fact were supported by competent evidence; therefore, this argument is without merit.
For the foregoing reasons, the opinion and award of the Industrial Commission is without error.
Affirmed.
Judges BRYANT and ARROWOOD concur.
Report per Rule 30(e).