ZACHARY, Judge.
C & J Carriage House and its workers' compensation insurance carrier, Ohio Casualty Group/Liberty Mutual Insurance Co. (collectively, with C&J Carriage House, defendants), appeal an Opinion and Award of the Industrial Commission granting plaintiff Elizabeth Thornton's (Thornton) request for compensation for medical treatment related to ongoing pain in her lower back. Defendants' primary argument on appeal is that they successfully rebutted the evidentiary presumption enunciated in Parsons v. Pantry, Inc. , 126 N.C. App. 540, 485 S.E.2d 867 (1997), which provides that once a plaintiff meets her initial burden of demonstrating a causal relationship between an injury and a work-related accident, she is entitled to a presumption that her current symptoms and associated medical treatment are directly related to her compensable injury (the Parsons presumption). For the reasons that follow, we conclude that defendants failed to rebut the Parsons presumption, and that even if they had, Thornton presented evidence demonstrating that the lower back pain and related treatment for which she now seeks compensation are directly related to her compensable injury. Accordingly, we affirm the Commission's Opinion and Award.
I. Background
This case arises out of an admittedly compensable back injury that Thornton suffered while employed with defendant C & J Carriage House. In July 1998, Thornton sat down in a chair at work, heard a sudden "pop," and fell to the floor. Defendants accepted Thornton's workers' compensation claim, and paid medical and indemnity benefits following her injury.
After receiving an extensive course of conservative treatment, Thornton underwent a bilateral lumbar laminectomy and resection of the L4-L5 disc on 4 January 1999. When Thornton continued to experience pain and debilitating symptoms related to her injury and treatment, she was referred to Dr. David Kee, who performed further surgical intervention on Thornton's spine in the form of an "inter-body spinal fusion with hardware placement" at L4-L5. In July 2001, Dr. Kee determined that Thornton had reached maximum medical improvement, and he assigned a 20% partial disability rating to her spine. Several months later, in January 2002, Thornton saw Dr. Kee and reported significant pain in her left hip and left leg. Dr. Kee treated Thornton with lumbar spine injections and multiple prescription pain medications. Thornton returned to Dr. Kee in March 2002, and she reported an "acute onset" of extreme pain in her left leg after she opened a refrigerator door and experienced a "pop" in her lower back that caused her to fall down. Consequently, a CT myelogram was performed, which showed "that bone graft material [was] extending into the canal on the right side at L4-L5, possibly compressing the right L5 nerve root."
On 8 November 2002, the parties entered into a Compromise Settlement Agreement (CSA) that resolved the indemnity portion of Thornton's claim. However, the medical portion of her claim remained open, and the CSA authorized ongoing medical treatment related to her compensable lower back injury. After an August 2004 CT myelogram showed probable loosening of the hardware placed at L4-L5, Thornton underwent three-level (L3-L5) fusion surgery on her spine in March 2005.[1] When Thornton continued to experience chronic lower back pain, she was referred to Dr. Kenneth Wenz, a pain management specialist whose treatment was authorized by defendants. Dr. Wenz treated Thornton by managing her medication and administering periodic epidural steroid injections. Thornton experienced some pain relief during this course of treatment, but her patient-doctor relationship with Dr. Wenz was compromised when she tested positive for cocaine in October 2006. Once an additional drug screen confirmed the prior positive results for cocaine, Dr. Wenz discharged Thornton from treatment, weaned her off narcotic pain medications, and referred her to substance abuse counseling.
Because Thornton could not afford the drug rehabilitation programs that were recommended, she never attended one. As a consequence, defendants suspended her medical benefits for approximately a year and a half. The record reveals that Thornton abused alcohol and cocaine from 2006 through late 2009. During this period, Thornton was hospitalized several times with severe health problems-including organ failure-that were caused by acute cocaine intoxication.
In February 2008, defendants authorized Thornton to seek treatment for her compensable injury with Dr. Jason Rosenburg, who recommended the "implantation of a spinal cord stimulator." To that end, Thornton was referred to Dr. Leonard Goldschmidt for a psychological evaluation during which Thornton reported that she took up to 30 Tylenol Arthritis tablets per day to control her lower back pain. It was eventually determined that Thornton was not a candidate for spinal cord stimulation.
Thornton fell down several times in 2008 when stabbing pain in her back caused her left leg to give way. Particularly relevant to this appeal, on 26 February 2009, Thornton felt a popping sensation in her back while descending a flight of stairs. As a result, she sought treatment at a local hospital's emergency room for "left flank pain radiating into [her] left leg." The next day, Thornton returned to the emergency room after someone knocked her down in a store.[2] Medical records from this emergency room visit reveal that Thornton reported her previous lower back surgeries, including the 2005 lumbar fusion surgery, and stated that she "had been doing better, only with intermit [t]ent pain control[l]ed with [T]ylenol until this injury."
Over the next three years, Thornton consistently reported and sought various treatments for musculoskeletal pain. In January 2012, Dr. William Richardson, a board-certified anesthesiologist and pain management specialist, diagnosed Thornton with post-laminectomy pain syndrome of the lumbar spine, lumbar radiculitis, lumbar spondylosis, and lumbar degenerative disc disease. On 21 February 2013, Thornton underwent an L5-S1 bilateral medial branch block-a diagnostic procedure authorized and paid for by defendants-which allowed her to achieve a short-term, 90 percent improvement in her pain. Based on the results of the medial branch block, Dr. Richardson recommended that Thornton undergo rhizotomy, a surgical procedure in which nerve roots in the spinal cord are destroyed in order to provide longer-term relief from chronic pain. However, defendants refused to authorize this course of treatment.
In April 2013, defendants obtained a peer review of the rhizotomy recommendation from board-certified neurologist Dr. Bruce LeForce, who "agreed that the proposed rhizotomy treatment was related to [Thornton's] original compensable injury, but [who] disagreed that the recommendation was 'medically necessary[.]' " Defendants then obtained a second opinion from Dr. Mark Foster, an orthopaedic surgeon, who reviewed Thornton's medical records and provided written responses to specific questions regarding the potential effectiveness of rhizotomy in treating Thornton's pain. In a report dated 14 May 2014, Dr. Foster concluded, inter alia , that Thornton's pain was likely not related to her original compensable injury, as his reading of the medical records indicated that Thornton had reached maximum medical improvement through her 2006 fusion surgery and that her pain had been controlled with Tylenol prior to 2007. In light of these reviews, defendants continued to refuse authorization of the rhizotomy treatment.
Thornton initiated the present action on 22 November 2013 by filing a Form 33 request for hearing. Following defendants' Form 33R response, the matter was heard before Deputy Commissioner Robert Harris on 22 August 2014. The parties deposed Dr. Foster in October 2014, and Dr. Richardson was deposed in November 2014. On 30 April 2015, Deputy Commissioner Harris entered an Opinion and Award that ordered defendants to pay for all treatment related to Thornton's compensable back injury, including the recommended rhizotomy treatment. Defendants appealed to the Full Commission.
After hearing the matter in October 2015, the Full Commission entered an Opinion and Award on 3 March 2016 affirming the deputy commissioner's award. The Commission's Opinion and Award contained the following pertinent findings of fact:
35. Dr. Richardson testified that he has performed thousands of rhizotomies, and in his experience, approximately 80% of patients who have successful diagnostic blocks respond well to rhizotomy treatments.
36. Dr. Richardson also testified, to a reasonable degree of medical certainty, that plaintiff would benefit from rhizotomy and that her need for rhizotomy treatment is related to her original compensable injury because of the fusion hardware placement in the surgeries that were occasioned by that injury.
37. During his deposition, Dr. Richardson reviewed and accounted for plaintiff's pre-2011 medical history, including her cocaine and alcohol abuse from 2006 through 2009, her lack of forthrightness with medical providers about her substance abuse, and her early 2009 incidents, particularly the February 26, 2009 incident in which she was knocked over in a store. Regarding plaintiff's prior cocaine abuse, Dr. Richardson testified that he was concerned about her long-term use of opiates, even before he learned of her history of substance abuse. Dr. Richardson testified that he had already weaned plaintiff off of Percocet and discontinued the Butrans patch, as of the date of his post-hearing deposition. Dr. Richardson further testified that, given plaintiff's substance abuse history, trying the non-medication route with rhizotomy treatment seemed all the more appropriate.
38. Dr. Richardson testified that the February 26, 2009 incident in which plaintiff was knocked down in a store most likely served to exacerbate her pre-existing low back condition, and her pre-existing low back condition was related to the original compensable injury. As Dr. Richardson further testified, the probable cause of plaintiff's worsening symptoms after February 26, 2009 has been the surgical intervention she underwent at the lumbar levels directly above where she now describes her pain.
39. Dr. Foster testified that, based on his records review and not having examined plaintiff, he felt plaintiff's low back pain was multifactorial in nature. He could not apportion it among contributors, but felt it could include degenerative disc disease, facet arthritis, SI joint dysfunction, muscle inflammation, sciatica, and perhaps non-organic contributors. Initially, Dr. Foster testified that he did not believe that plaintiff's current low back symptoms and treatment recommendations are causally related to her original compensable injury. Rather, he felt that plaintiff's current condition is related to the February 26, 2009 incident. However, as Dr. Foster later testified, he could not say to a reasonable degree of medical certainty that plaintiff's current low back condition is not related to the original compensable injury.
40. Dr. Foster testified that he rarely refers patients for rhizotomy because he does not think it provides durable pain relief. However, he testified that rhizotomy is cheap and safe, and even if it were not a "home run" treatment modality, it would not be unreasonable to try it for plaintiff.
41. The Commission gives greater weight to the expert medical opinions of Dr. Richardson over that of Dr. Foster and the peer review physician. Dr. Richardson, a specialist in pain management, has treated plaintiff regularly since 2012. He has confronted and addressed plaintiff's history of substance abuse and accounted for it in his opinions. In contrast, Dr. Foster has never evaluated plaintiff, nor is his specialty pain management. The peer review physician also has not examined plaintiff and is not licensed to practice medicine in this state.
42. Based upon a preponderance of the evidence in view of the entire record, the Commission finds that plaintiff's current low back condition is causally related to her original compensable injury of 1998 and that being knocked down in a store in February 2009 served to exacerbate her pain from that original injury. The Commission finds that the February 2009 incident does not qualify as an independent, intervening event that would bar her right to additional medical treatment.
Based on these findings, the Commission concluded that, in accordance with the holding in Parsons , Thornton was entitled to a presumption that her current lower back pain was causally related to her compensable injury. The Commission further concluded that defendants had failed to rebut this presumption, and that even if they had, Dr. Richardson's testimony established a causal relationship between Thornton's current back condition and her compensable accident. Accordingly, the Commission determined that Thornton was entitled to further medical treatment, including the rhizotomy treatment, for her lower back condition. The Commission also ordered that defendants "issue payment in the amount of $400.00 directly to plaintiff's counsel as reimbursement for plaintiff's pre-payment of Dr. Richardson's expert witness fee," and that defendants issue payment of the sums of $40.00 and $10.00 to plaintiff's counsel and Dr. Richardson, respectively, "for failure to issue timely payment of an expert witness fee following entry of a fee order." Chairman Charlton Allen dissented from the Commission's Opinion and Award and concluded that defendants rebutted the Parsons presumption through Dr. Foster's testimony. Defendants now appeal from the Commission's Opinion and Award.
II. Standard of Review
This Court's standard of review in workers' compensation cases is well established and "quite narrow." Calloway v. Mem'l Mission Hosp. , 137 N.C. App. 480, 484, 528 S.E.2d 397, 400 (2000). Our review of the Commission's Opinion and Award is "limited to the consideration of two questions: (1) whether the Full Commission's findings of fact are supported by competent evidence; and (2) whether its conclusions of law are supported by those findings." Id. (citation omitted). "Under the Workers' Compensation Act, '[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.' " Richardson v. Maxim Healthcare/Allegis Grp. , 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (quoting Anderson v. Lincoln Constr. Co. , 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965) ). Thus, when reviewing a workers' compensation claim, an appellate court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The [reviewing] court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Adams v. AVX Corp. , 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation omitted). The Commission's findings of fact are "conclusive on appeal when supported by any competent evidence, even though there be evidence that would support findings to the contrary." Id. (citation and quotation marks omitted). Similarly, unchallenged findings of fact are "conclusively established on appeal." Johnson v. Herbie's Place , 157 N.C. App. 168, 180, 579 S.E.2d 110, 118 (2003). "The evidence tending to support [a] plaintiff's claim is to be viewed in the light most favorable to [the] plaintiff, and [the] plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence." Adams , 349 N.C. at 681, 509 S.E.2d at 414 (citation omitted). As such, "[t]he Commission's findings of fact may be set aside on appeal only where there is a complete lack of competent evidence to support them." Jones v. Candler Mobile Vill. , 118 N.C. App. 719, 721, 457 S.E.2d 315, 317 (1995) (citation omitted). "The Commission's conclusions of law are subject to de novo review." Hobbs v. Clean Control Corp. , 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002).
III. Analysis
A. Thornton's Spine Injury and the Parsons Presumption
Defendants' principal argument on appeal is that the Commission erred in concluding that defendants did not successfully rebut the presumption that Thornton's current lower back condition is directly related to the compensable spine injury she suffered in the July 1998 accident. The essence of defendants' argument is that plaintiff's falls on 26 February 2009 constituted an independent, intervening cause of the pain and discomfort Thornton has experienced since that event, and that the rhizotomy treatment Thornton now seeks is unrelated to her compensable injury. We disagree.
An employer is required to provide medical compensation for the treatment of compensable injuries. N.C. Gen. Stat. § 97-25(a) (2015). As a result, an employer must pay for "additional medical treatment [that] is directly related to the compensable injury[,]" Perez v. Am. Airlines/AMR Corp. , 174 N.C. App. 128, 135, 620 S.E.2d 288, 292 (2005) (citations omitted), disc. review improvidently allowed , 360 N.C. 587, 634 S.E.2d 887-88 (2006), when that treatment is designed "to effect a cure, provide relief, or lessen the period of disability." N.C. Gen. Stat. § 97-25(c) (2015) (employer's responsibility for medical compensation includes any changes in treatment so long as "the change is reasonably necessary to effect a cure, provide relief, or lessen the period of disability").
It is well established that an employee seeking compensation for an injury bears the burden of establishing a causal relationship between the injury suffered and the work-related accident. Hedges v. Wake Cty. Pub. Sch. Sys. , 206 N.C. App. 732, 734, 699 S.E.2d 124, 126 (2010), disc. review denied , 365 N.C. 77, 705 S.E.2d 746 (2011). In Parsons , however, this Court recognized that once a workers' compensation claimant has met this initial burden and established that her injuries are compensable, "[l]ogically, defendants [then] have the responsibility to prove the original finding of compensable injury is unrelated to her present discomfort." 126 N.C. App. at 542, 485 S.E.2d at 869. The reason for placing an evidentiary burden on the employer in this context is clear: "To require [a] plaintiff to re-prove causation each time she seeks treatment for the very injury that the Commission has previously determined to be the result of a compensable accident is unjust and violates our duty to interpret the Act in favor of injured employees." Id. Consequently, when additional medical treatment for the compensable injury is required, a rebuttable presumption arises-the Parsons presumption-"that the treatment is directly related to the original compensable injury and the employer has the burden of producing evidence showing the treatment is not directly related to the compensable injury." Reinninger v. Prestige Fabricators, Inc. , 136 N.C. App. 255, 259, 523 S.E.2d 720, 723 (1999). If the employer "rebuts the Parsons presumption, the burden of proof shifts back to the plaintiff." Miller v. Mission Hosp., Inc. , 234 N.C. App. 514, 519, 760 S.E.2d 31, 35 (2014) (citation omitted).
In addition,
[t]he aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury. Unless the subsequent aggravation is the result of an independent intervening cause attributable to claimant's own intentional conduct, the subsequent aggravation of the primary injury is also compensable. An "intervening cause" in the context of the Workers' Compensation Act ... is an occurrence "entirely independent of a prior cause. When a first cause produces a second cause that produces a result, the first cause is a cause of that result."
Horne v. Universal Leaf Tobacco Processors , 119 N.C. App. 682, 685, 459 S.E.2d 797, 799 (1995) (citations omitted).
Here, defendants do not contest the compensability of Thornton's July 1998 accident. Therefore, defendants bore the burden of demonstrating that Thornton's current claims regarding her lower back and the recommended rhizotomy treatment are not related to her original compensable injury. See Perez , 174 N.C. App. at 137 n. 1, 620 S.E.2d at 293 n. 1 ("We can conceive of a situation where an employee seeks medical compensation for symptoms completely unrelated to the compensable injury. But the burden of rebutting the [Parsons ] presumption of compensability in this situation, although slight, would still be upon the employer."). Where the exact nature and probable genesis of an injury involves " 'complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury.' " Holley v. ACTS, Inc. , 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003) (quoting Click v. Freight Carriers, Inc. , 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980) ).
When expert opinion is based "merely upon speculation and conjecture," it cannot qualify as competent evidence of medical causation. Stating an accident "could or might" have caused an injury, or "possibly" caused it is not generally enough alone to prove medical causation; however, supplementing that opinion with statements that something "more than likely" caused an injury or that the witness is satisfied to a "reasonable degree of medical certainty" has been considered sufficient.
Carr v. Dep't of Health & Human Servs. (Caswell Ctr.) , 218 N.C. App. 151, 154-55, 720 S.E.2d 869, 873 (2012) (citations omitted). " 'The evidence must be such as to take the case out of the realm of conjecture and remote possibility, that is, there must be sufficient competent evidence tending to show a proximate causal relation.' " Holley , 357 N.C. at 232, 581 S.E.2d at 753 (brackets omitted) (quoting Gilmore v. Hoke Cty. Bd. of Educ. , 222 N.C. 358, 365, 23 S.E.2d 292, 296 (1942) ).
Defendants argue that they rebutted the presumption of compensability through the testimony of Dr. Foster who, defendants assert, testified that Thornton suffered a "permanent exacerbation" of her lower back problems due to her falls on 26 February 2009. According to defendants, the "competent evidence supports a finding that the 2009 injury was the result of an independent[,] intervening cause." However, even assuming that this testimony adequately showed that Thornton's current pain and symptoms are unrelated to her compensable back injury, the Commission discredited Dr. Foster's testimony, as it was permitted to do. See Perkins v. U.S. Airways , 177 N.C. App. 205, 211, 628 S.E.2d 402, 406 (2006) (noting that when the Industrial Commission reviews testimony from multiple medical experts, it is entitled to place greater weight on the testimony of one doctor over that of another). Dr. Foster acknowledged that a myriad of factors could have contributed to Thornton's current need for treatment, and while Dr. Foster did opine that Thornton's current condition was related to the 26 February 2009 falls, he could not testify to a reasonable degree of medical certainty that the pain and symptoms Thornton suffered after 2009 were unrelated to her compensable injury. As such, the Commission properly concluded that Dr. Foster "equivocated in his opinion about whether the 2009 event caused [Thornton's] current back condition." The Commission also noted that, unlike Dr. Richardson, Dr. Foster is not a pain management specialist and had never examined Thornton.
Furthermore, again assuming for the sake of argument that the 26 February 2009 events were independent, intervening causes of Thornton's current condition, there is no evidence in the record that either fall was attributable to Thornton's "own intentional conduct."[3] Horne , 119 N.C. App. at 687, 459 S.E.2d at 800-01. "An aggravation of a compensable injury is also compensable , 'unless it is the result of an independent, intervening cause attributable to claimant's own intentional conduct.' " Id. (emphasis added) (quoting Roper v. J.P. Stevens & Co. , 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983) ). Thus, Dr. Foster's testimony that Thornton's 26 February 2009 fall was an exacerbation or aggravation of her prior compensable injury did not advance defendants' cause. Accordingly, defendants failed to rebut the Parsons presumption.
Finally, even if defendants had rebutted the Parsons presumption, thereby shifting the burden of proof back to Thornton, Dr. Richardson's testimony established that Thornton's current lower back condition was causally related to her original, compensable injury. Dr. Richardson explained that spinal fusion patients routinely develop degeneration of the facet joints at levels directly above and below the fused vertebrae, and that Thornton's current symptoms were consistent with such degeneration. Dr. Richardson then testified that it was his opinion to a reasonable degree of medical certainty that the probable cause of Thornton's post-February 2009 worsening back symptoms was the multiple lumbar fusion surgeries that she had undergone. He later reiterated this conclusion:
So as I kind of stated earlier, the fact that she has this problem that has flared up or gotten worse is most likely due to her-is an exacerbation of an old problem, the old problem being most likely the surgery and the hardware that is in her back. Again, that causes an increased amount of stress load on these hinges. And so whatever she needed to have the surgery would be the cause of the surgery and then subsequently this.
In sum, the issue of Dr. Foster's credibility was a question solely for the Commission to decide, and we do not engage in any review of the Commission's decision to afford greater weight to Dr. Richardson's opinion. Further, even if Thornton's falls on 26 February 2009 had been proven to be independent, intervening causes of her continuing symptoms, there is no evidence that the events were caused by her own intentional conduct, as required by our case law. Defendants therefore failed to rebut the Parsons presumption, and even if they had rebutted the presumption, Dr. Richardson's testimony provided competent evidence to support the Commission's finding that Thornton's current lower "back condition is causally related to her original compensable injury[.]" Dr. Richardson also testified that it was his opinion to a reasonable degree of medical certainty that the rhizotomy treatment would provide Thornton relief from pain caused by her current condition. Accordingly, the Commission's findings supported its ultimate conclusions that Thornton was "entitled to continued medical treatment for her low[er] back treatment," and that the recommended "rhizotomy treatments ... are reasonably required to effect a cure or give relief for [Thornton's] compensable low[er] back condition."
B. Additional Issues Raised by Thornton
In addition to the issues raised on appeal by defendants, Thornton, without appealing the Commission's Opinion and Award, raises two additional issues for this Court's review.
1. Expert Witness Fees and Late Payment Penalties
Thornton argues that defendants have failed to comply with the portion of the Commission's Opinion and Award in which defendants were ordered to reimburse Thornton's counsel for pre-payment of Dr. Richardson's expert witness fees and to tender late payment penalties. As such, Thornton argues, this Court should remand the case to the Commission and order defendants "to show cause as to why they have failed to comply with said Opinion and Award[.]"
Rule 28(c) of the Rules of Appellate Procedure allows an appellee, "[w]ithout taking an appeal," to "present issues on appeal based on any action or omission of the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." In the instant case, however, the issue raised by Thornton is not an alternative basis in the law supporting the Opinion and Award, but rather a distinct challenge to the conduct of defendants, seeking affirmative relief. Accordingly, the issue is not properly before this Court.
2. Sanctions
In addition, Thornton contends that defendants should be sanctioned pursuant to Rule 34 of the Rules of Appellate Procedure because the appeal was not well grounded in fact or law and was taken for improper purposes. The essence of Thornton's argument is that defendants' contentions are meritless, and that defendants have appealed merely to needlessly increase the cost of litigating this case.
An appellate court "may, on its own initiative or motion of a party, impose a sanction against a party or attorney or both when the court determines that an appeal ... was frivolous because of one or more of the following: (1) the appeal was not well grounded in fact and was not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." N.C. R. App. P. 34(a)(1) (2015). Rule 34(a)(2) also permits sanctions when "the appeal was taken ... for an improper purpose, such as to ... cause ... needless increase in the cost of litigation." Here, although defendants' arguments on appeal were not particularly strong, we conclude, "[i]n our discretion," that sanctions should not be imposed upon counsel pursuant to Rule 34. State v. Hudgins , 195 N.C. App. 430, 436, 672 S.E.2d 717, 721 (2009).
IV. Conclusion
For the reasons stated above, we affirm the Commission's Opinion and Award. In addition, Thornton's arguments regarding the expert witness fees and late payment penalties are not properly before us. Finally, we decline to impose sanctions on defendants pursuant to Rule 34 of the Rules of Appellate Procedure.
AFFIRMED.
Report per Rule 30(e).
Judges STROUD and McCULLOUGH concur.

Defendants initially refused to authorize the March 2005 fusion surgery-which Thornton filed under her personal health insurance coverage-but defendants ultimately paid for the surgery after the Industrial Commission entered an order directing them to do so.

Although Thornton reported to the emergency room on 26 and 27 February 2009, the medical records from the 27 February visit indicate that both the injury on the stairs and the injury in the store occurred on 27 February 2009.

We note that defendants' brief contains numerous references to Thornton's past illicit drug use, the implication being that Dr. Richardson's deposition testimony could not provide competent evidence that Thornton's current condition is causally related to her compensable lower back injury. More specifically, defendants argue that Dr. Richardson's opinions were based on an incomplete understanding of Thornton's medical history before 2011, as he was unaware of her history of substance abuse and the prior hospitalizations that resulted. Defendants also point to the fact that Thornton was previously discharged from medical treatment for her compensable injury due to her drug use.
Our review of the record reveals that, as the Commission noted in Finding of Fact No. 37, Dr. Richardson reviewed at deposition a portion of Thornton's pre-2011 medical records and accounted for Thornton's prior substance abuse and her lack of candor with medical providers concerning those issues. Although Dr. Richardson admitted that records of Thornton's prior substance abuse and related hospitalizations conflicted with the subjective history that she provided him, Dr. Richardson's opinion on causation remain unchanged. Furthermore, Dr. Richardson stated that he was already concerned about Thornton's history of "long-term opiate therapy" even without knowledge of her addiction problems. Dr. Richardson acknowledged that additional information about Thornton's substance abuse would alter future medication regimens, but he also stated that this information had no impact on his recommendation that Thornton undergo rhizotomy treatment for her current back symptoms. For these reasons, we conclude that defendants' repeated references to Thornton's history of substance abuse are red herrings, and that her history of substance abuse had no impact on Dr. Richardson's testimony regarding causation or the recommended rhizotomy treatment of Thornton's back symptoms.