***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gillen and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications, the Opinion and Award of Deputy Commissioner Gillen.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is November 16, 2005.
2. The parties are subject to the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between plaintiff and defendant-employer on or around November 16, 2005.
4. Defendant-employer employed three or more employees.
5. The carrier on the risk for defendant-employer is Stonewood Insurance Company.
6. The following exhibits were stipulated into evidence:
 a. Stipulated Exhibit 1 — Pre-Trial Agreement.
 b. Stipulated Exhibit 2 — Plaintiff's medical records collectively paginated 1-224.
 c. Stipulated Exhibit 3 — Plaintiff's medical records collectively paginated 225-436.
 d. Plaintiff's Exhibit 1 — Letter dated December 11, 2008 from Vance-Granville Community College to attorney for plaintiff.
 e. Plaintiff's Exhibit 2 — Invoices from DJG Investigative Services Inc.
 f. Plaintiff's Exhibit 3 — Invoices from Absolute Surveillance, Inc.
 g. Plaintiff's Exhibit 1-A — Videotape containing surveillance.
 h. Plaintiff's Exhibit 2-A — Videotape containing surveillance.
 i. Plaintiff's Exhibit 4-A — DVD disc containing surveillance.
 j. Defendants' Exhibit 1 — Surveillance report document dated May 17, 2006. *Page 3 
 k. Defendants' Exhibit 2 — Surveillance report document dated August 30, 2006.
 l. Defendants' Exhibit 3 — Surveillance report document dated July 23, 2008.
 m. Defendants' Exhibit 4 — A surveillance report document dated July 30, 2008.
7. The only issue before the Commission on appeal is whether plaintiff's cervical condition is causally related to his compensable workplace accident on November 16, 2005.
 ***********
Based upon all of the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 53 years old and has an eighth grade education. Plaintiff testified he was held back in school, in part because he is a poor reader and had trouble memorizing material.
2. Plaintiff was employed by defendant-employer for over 20 years. Plaintiff's jobs with defendant-employer included electrical work, plumbing work, digging trenches, and mechanical work. Plaintiff's vocational history is comprised of manual labor. Plaintiff had experienced some back problems prior to November 16, 2005.
3. Plaintiff testified that on November 16, 2005 he felt pain like he had been stabbed in his back while working for defendant-employer. Plaintiff was installing wiring and plumbing in a mobile home at the time. Plaintiff did not initially seek medical treatment and returned to work. Plaintiff did seek treatment with his family doctor, Dr. Michael Mahan, on November 22, 2005. The medical note of November 22, 2005 states that plaintiff had "severe pain in his back after *Page 4 
twisting funny, felt a pop and pain running down his left side into the top of his foot. Pain was so severe he was having a hard time straightening up."
4. Defendants accepted plaintiff's claim as compensable by Form 60 dated December 13, 2005. The form described plaintiff's injury as lifting and low back pain. Plaintiff's disability began on November 28, 2005 and plaintiff's temporary total disability compensation commenced on December 5, 2005.
5. On December 16, 2005 Dr. Mahan diagnosed plaintiff with degenerative joint disease and canal stenosis. Plaintiff began physical therapy in December 2005.
6. Defendants authorized plaintiff's medical treatment, and plaintiff later treated with Dr. William F. Lestini on January 9, 2006. Dr. Lestini's diagnostic impression of plaintiff was degenerative disc disease from L2 to L5-S1. Dr. Lestini recommended conservative treatment at that time.
7. Plaintiff participated in a course of work conditioning at Central Carolina Physical Therapy from February 15, 2006 through May 9, 2006.
8. On March 28, 2006, Dr. Lestini noted he did not think plaintiff was going to be able to get back to full time regular duty work and he recommended that plaintiff continue his work conditioning program. Dr. Lestini noted that surgical options should be considered as a last resort.
9. On May 9, 2006 plaintiff followed up with Dr. Lestini. Dr. Lestini reiterated his opinion that plaintiff should avoid surgery if possible.
10. Defendants conducted video surveillance of plaintiff on May 12 and 13, 2006. The video from May 12, 2006, defendants' exhibit 1-A, shows plaintiff walking, doing light maintenance in and around a boat, driving the boat to a lake, and riding in the boat on the lake. *Page 5 
The video from May 13, 2006, defendants' exhibit 1-A, shows plaintiff walking in and around a boat. The surveillance videos from May 12 and 13, 2006 do not depict plaintiff engaged in any activity materially inconsistent with plaintiff's testimony or the information plaintiff provided to his doctors.
11. On June 16, 2006 plaintiff underwent a CT myelogram at Duke Health Regional Hospital. Dr. Lestini noted that plaintiff has severe degenerative disc changes at L4-5 and L5-S1; however, he does have significant disc narrowing and changes at both L2-3 and L3-4 as well. Dr. Lestini also noted that plaintiff would be a potential candidate for a four-level decompression and stabilization if plaintiff's symptoms are intolerable. If plaintiff can tolerate the pain, Dr. Lestini identified plaintiff at maximum medical improvement with a 5% functional impairment and permanent light duty.
12. On July 25, 2006 plaintiff presented to Dr. Robert Lacin for a second opinion evaluation. Dr. Lacin recommended facet joint blocks to better diagnose plaintiff's pain and possibly a discogram to pinpoint the particular pain level.
13. Defendants conducted video surveillance of plaintiff on August 22, 2006 which is defendants' exhibit 2-A. This video shows plaintiff walking around his yard, doing light boat-related maintenance, and cleaning a car floorboard mat. This surveillance video from August 22, 2006 does not depict plaintiff engaged in any activity materially inconsistent with plaintiff's testimony or the information plaintiff provided to his doctors.
14. On September 18, 2006 plaintiff presented to Dr. Gary Smoot for facet joint blocks. Dr. Smoot's impression was that plaintiff suffered from multiple levels of degenerative disc and joint disease. On the following day Dr. Smoot performed right-sided L4-L5 and L5-S1 facet injections. On November 9, 2006 plaintiff returned to Dr. Smoot and underwent left-sided *Page 6 
facet injections. Dr. Smoot noted on November 20, 2006 that plaintiff reported that his right-sided pain was right back to his previous level.
15. On January 22, 2007 plaintiff was seen by Dr. Michael Mahan. At that time plaintiff reported neck pain as well as shooting pain and numbness down into his left arm.
16. On March 8, 2007 plaintiff underwent bilateral medial branch radiofrequency neuroablation procedures at L2, L3, L4, and L5 as well as an L5 dorsal ramus neuroablation procedure. These procedures were performed by Dr. Smoot.
17. On April 5, 2007 plaintiff returned to Dr. Lestini. Dr. Lestini released plaintiff with permanent restrictions, and stated that plaintiff was limited to a light-duty position on a permanent basis. Dr. Lestini also restricted plaintiff's lifting to 20 pounds.
18. Plaintiff had difficulty sitting in and concentrating during GED classes due to pain. Plaintiff was still attending GED classes as of the date of the hearing before the Deputy Commissioner. Plaintiff is currently at a 6th grade level in Math and a 4th grade level in English.
19. Dr. Mahan's medical note from January 4, 2008 reports that plaintiff continued to have chronic back and neck pain. He also noted plaintiff was tearful and recommended a referral for a psychological or psychiatric evaluation.
20. On February 8, 2008 plaintiff met with North Carolina Industrial Commission nurse, Linda Vaughan. Plaintiff advised Ms. Vaughan that his neck pain and numbness in his hands began after the radiofrequency ablation performed by Dr. Smoot.
21. On February 19, 2008 plaintiff returned to Dr. Lacin for an Independent Medical Evaluation. Dr. Lacin concluded plaintiff had reached maximum medical improvement and assigned a permanent partial impairment rating of 5% to plaintiff's back. Dr. Lacin further suggested that plaintiff undergo a functional capacity evaluation when he finished his schooling so *Page 7 
his work limitation could be determined accordingly.
22. On April 4, 2008 plaintiff was seen by Dr. Scott S. Sanitate with Cary Orthopedic Spine Specialists. Dr. Sanitate examined plaintiff and reviewed plaintiff's imaging studies. Dr. Sanitate reported that plaintiff suffered chronic low back pain secondary to twisting injury in 2005 with underlying multilevel lumbar degenerative disk disease.
23. On June 20, 2008 Special Deputy Commissioner Christopher B. Rawls ordered a one-time psychiatric evaluation of plaintiff.
24. Defendants conducted video surveillance of plaintiff in July 2008, defendants' exhibit 4-A. In addition to some boat-related activities very similar to those depicted in the 2006 videos, the July 2008 surveillance also shows plaintiff walking and driving during the performance of what seem to be ordinary errands such as attending a doctor's appointment, shopping at Wal-Mart, and eating at McDonalds. The surveillance videos from July 2008 do not depict plaintiff engaged in any activity materially inconsistent with plaintiff's testimony or the information plaintiff provided to his doctors.
25. Plaintiff was evaluated by Dr. Kristine M. Herfkens at Triangle Neuropsychology Services on July 25 and August 4, 2008. In the written report prepared by Dr. Herfkens subsequent to the evaluation, Dr. Herfkens documents that "[plaintiff] appears to be markedly depressed," that "[plaintiff's] psychological evaluation was consistent with a chronic pain disorder complicated by major depression, associated generalized anxiety, and a rather prominent dependent personality disorder with avoidant features." Dr. Herfkens went on to conclude: "[Plaintiff's] depression, anxiety, and personality disorder can be thought of as being exacerbated by and exacerbating his chronic pain. It is unlikely that [plaintiff's] interpersonal or emotional functioning was much better prior to his back injury; however these factors are inhibiting his *Page 8 
recovery from and adjustment to his chronic pain and are almost certainly made worse by both his pain and his occupational difficulties." Dr. Herfkens concluded that plaintiff would benefit from psychological treatment for these conditions.
26. On November 19, 2008 plaintiff was evaluated by Dr. Thomas A. Dimmig on the referral of Dr. Mahan. Dr. Dimmig diagnosed cervical radiculopathy and recommended that plaintiff undergo a two-level cervical fusion surgery.
27. According to Dr. Michael Mahan, plaintiff's cervical neck pain resulted as a complication from plaintiff's positioning during the facet joint procedure and/or the neuro-ablation procedure. Dr. Mahan also believed that plaintiff required additional treatment for his cervical spine.
28. Dr. Robert Lacin stated during his deposition that his memory was not clear regarding his evaluation of plaintiff's neck.
29. Although he thought it unlikely, Dr. Gary L. Smoot admitted that there was a possibility that some cervical aggravation could have occurred during the procedures he performed on plaintiff.
30. Dr. Scott Sanitate believed plaintiff's cervical neck pain was causally related to the facet joint procedure or the neuro-ablation procedure that plaintiff had, based on the history plaintiff provided him.
31. Dr. William F. Lestini stated at her deposition it was quite likely that the November 16, 2005 incident "aggravated" plaintiff's back condition. Dr. Lestini also stated that plaintiff, if he chose not to have surgery, would have a permanent light duty recommendation as well as a 20 pounds occasionally lifting restriction.
32. Kristine Herfkens, Ph.D., stated at her deposition that plaintiff needs appropriate *Page 9 
psychological and psychiatric treatment as a result of his lumbar and cervical back conditions.
33. According to rehabilitation counselor Stephen Carpenter, plaintiff was not employable at any type of job due to the medical and vocational limitations presented in the medical records and by vocational testing, which includes consideration of his age, education, limited academic functioning and lack of transferable skills.
34. Having considered the testimony of Dr. William F. Lestini, Dr. Scott Sanitate, Dr. Gary L. Smoot, Dr. Robert Lacin, Dr. Michael Mahan, Kristine Herfkens, Ph.D., and Stephen Carpenter, taken with their expertise and relative treatment histories with plaintiff, the Full Commission gives greater weight to the testimony and expert opinions of Drs. Herfkens, Lestini, Sanitate, and Mahan.
35. Plaintiff sustained damage to his cervical spine during or as a result of treatment for his lumbar spine condition.
36. Plaintiff's admittedly compensable work-related lumbar injury of November 16, 2005 caused or exacerbated plaintiff's subsequent cervical condition. The chronic pain consequent of these conditions caused plaintiff's psychological problems.
37. The credible medical and vocational evidence of record shows that, as a result of his November 16, 2005 injury, plaintiff has been totally disabled and therefore unable to earn any wages in any employment since November 28, 2005 and continuing.
38. The greater weight of the evidence establishes that the medical treatment plaintiff received to his lumbar and cervical spine was reasonable and medically necessary, and was reasonably calculated to effect a cure, give relief, and lessen the period of disability from plaintiff's admittedly compensable injury. *Page 10 
39. Defendants filed a Form 24 on December 5, 2008 alleging plaintiff's non-compliance with vocational rehabilitation as ordered by the Industrial Commission on February 19, 2008. Defendants alleged plaintiff was not putting forth full efforts in completing his GED, therefore prolonging his disability. Plaintiff missed some GED classes at Vance-Granville Community College but his absences were for justifiable reasons, including influenza, medical and vocational rehabilitation appointments and hospitalization. Plaintiff also missed classes due to this back pain, sleeplessness and depression. Plaintiff's GED instructor stated and the Full Commission finds that plaintiff was putting forth his best effort.
40. Plaintiff's average weekly wage is $778.87, which yields a weekly compensation rate of $519.27.
41. Defendants did not defend this matter in an unreasonable manner or without reasonable ground.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On November 16, 2005 plaintiff sustained a compensable accident while working for defendant-employer. Defendants accepted the injury to plaintiff's lumbar spine as compensable using a Form 60 dated December 2005. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005); Sims v. Charmes/Arby'sRoast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001). This admittedly compensable injury caused plaintiff's lumbar spine condition, or materially accelerated or aggravated a preexisting non-disabling condition. N.C. Gen. Stat. § 97-2(6); Brown v.Family Dollar Distrib. Ctr.129 N.C. App. 361, 499 S.E.2d 197 (1998). *Page 11 
2. Our courts have held that "when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause, attributable to claimant's own intentional conduct."English v. J.P. Stevens Co.,98 N.C. App. 466, 470, 391 S.E.2d 499,501 (1990); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983), disc.review denied, 310 N.C. 309, 312 S.E.2d 352 (1984). In this case, plaintiff's cervical condition is compensable as it is a natural consequence that flowed from his compensable November 16, 2005 injury, and was not the result of an independent intervening cause attributable to plaintiff's own intentional conduct.
3. The Form 60 filed in this matter does not create a presumption of continuing disability. The burden of proving compensable disability remains with plaintiff. Sims v. Charmes/Arby's RoastBeef, supra. In this case, plaintiff has produced sufficient evidence to prove that the admittedly compensable November 16, 2005 accident caused his subsequent ongoing disability. N.C. Gen. Stat. § 97-2(9); Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Regarding the payment of medical expenses for plaintiff's conditions, the Parsons presumption applies given the filing of the Form 60 in this case. Perez v. American Airlines, supra;Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997). Although this presumption is rebuttable, given the evidence in this case, defendants have not rebutted the presumption that the treatment required for plaintiff's lumbar condition is related to the compensable injury. Defendants therefore are responsible for plaintiff's continuing medical care for his lumbar condition. Perez v. American Airlines, supra;Parsons v. Pantry, Inc., supra. *Page 12 
5. Given the credible medical and vocational evidence of record, and as a result of his admittedly compensable injury of November 16, 2005 and the conditions consequent of it, plaintiff is temporarily totally disabled and is entitled, to the extent it has not been paid, to temporary total disability compensation at the rate of $519.27 per week for the period from November 28, 2005 and continuing until plaintiff returns to work or further order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. LowesProd. Distribution, supra.
6. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment for his lumbar and cervical conditions, incurred or to be incurred, necessitated by plaintiff's admittedly compensable injury of November 16, 2005. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Plaintiff's admittedly compensable November 16, 2005 accident and consequent chronic pain caused or exacerbated his subsequent psychological problems. Toler v. Black and Decker,134 N.C. App. 695, 518 S.E.2d 547 (1999). The medical evidence of record establishes a causal relationship between plaintiff's compensable November 16, 2005 accident and his subsequent psychological problems. Workman v. Rutherford Electric MembershipCorp., 170 N.C. App. 481, 613 S.E.2d 243 (2005).
8. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide any past and future psychiatric treatment related to plaintiff's November 16, 2005 compensable accident when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. § 97-25; Workman v. RutherfordElectric Membership Corp., supra; Toler v. Black and Decker,supra.
9. Plaintiff's partial non-compliance with vocational rehabilitation was justifiable and therefore defendants' are not entitled to suspend payment of compensation. *Page 13 
10. Defendants did not defend this action without reasonable grounds, and therefore plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Sparks v. Mountain BreezeRestaurant, 55 N.C. App. 663, 286 S.E.2d 575 (1982).
11. In its discretion, the Full Commission declines to award attorney's fees to plaintiff's counsel pursuant to N.C. Gen. Stat. § 97-88.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff temporary total disability compensation at the rate of $519.27 per week beginning November 28, 2005 and continuing until plaintiff returns to work or further Order of the Industrial Commission. Any accrued compensation shall be paid to plaintiff in a lump sum.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as a result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. Approved medical care includes treatment for plaintiff's lumbar spine and cervical spine conditions along with psychological treatment.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel. Of the accrued amount, defendants shall pay 25% directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel. *Page 14 
4. Plaintiff is ordered to submit to a functional capacity evaluation as scheduled by defendant with an impartial rehabilitation specialist that is agreed upon by both parties.
5. No attorney's fees are appropriate to be awarded in this matter under N.C. Gen. Stat. § 97-88.1 or § 97-88.
6. Defendants' Form 24 motion to suspend plaintiff's compensation is denied.
7. Defendants shall pay the cost due to the Commission.
This the 11th day of March 2010.
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE SELLERS COMMISSIONER *Page 1